## Shellhammer *et al. versus* Ashbaugh.

1. To take a parol gift or sale of land between father and son out of the operation of the Statute of Frauds the evidence thereof must be direct, express and unambiguous, its terms must be clearly defined, and all the acts necessary to its validity must have special reference to it and nothing else.

2. Where title to land is asserted under an alleged parol purchase, to take the contract out of the operation of the Statute of Frauds it must be supported by adequate evidence of an existing consideration, an adjustment of the boundaries of the land, and of the change of possession which the law requires.

October 23d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Armstrong county:* Of October and November Term 1875, No. 201.

[Shellhammer v. Ashbaugh.]

Ejectment by Josiah Shellhammer and others against John B. Ashbaugh for 50 acres of land.

William Ashbaugh, deceased, died in March 1873, intestate, leaving surviving him a widow, Susan Ashbaugh, and nine children, viz : Anna, wife of Jacob Shellhammer ; Elizabeth, wife of Charles Winel ; Susan, wife of Josiah Shellhammer ; Sarah, wife of Michael Shutt ; Levina, wife of Joseph Smail ; Caroline, wife of Isaiah Klingensmith ; Mary, wife of George Biggle and Catharine Ashbaugh, the plaintiffs, and John B. Ashbaugh, the defendant. Said decedent was in his lifetime, seised of a piece of land on which he resided, situated in Burrel township, Armstrong county, Pennsylvania, and containing about 121 acres. After his death his daughters presented to the Orphans' Court of said county a petition for partition of said land, whereupon inquest was awarded. At or before the return of the inquisition, John B. Ashbaugh appeared and filed an affidavit, claiming to hold in severalty fifty acres of said land, and denying that the decedent died seised of said fifty acres. Further proceedings in the partition were then stayed, and the Orphans' Court directed the bringing of this ejectment to determine the title in severalty set up by John B. Ashbaugh.

At the trial defendant claimed the fifty acres of land by virtue of a parol gift or sale of the same to him by William Ashbaugh, and in support of this alleged parol title the material evidence was the testimony of George Knepshell, which will be found set forth in full in the opinion of this court. The remaining evidence in the cause is also substantially produced in the opinion.

The plaintiffs presented this point to the court :—

" That taking the whole evidence given by the defendant and the legitimate inferences fairly deducible from it, the defendant has failed to establish such a contract as takes the case out of the Statute of Frauds and Perjuries, and the plaintiffs are entitled to recover the eight undivided ninth parts of the land in dispute."

The court answered : " We leave the question to you and the point is refused."

In the general charge the court (Logan, P. J.), after a reference to the cases of Eckert v. Mace, 3 Penna. R. 365 ; Poorman v. Kilgore, 2 Casey 365, and Taylor v. Henderson, 2 Wright 60, continued :—

" We have been asked to say that taking the testimony all together a parol contract with this definition has not been established. Were it not for the testimony of George Knepshell (the only witness who brings the parties, father and son, face to face at the making of a contract as we recall the testimony), we should so instruct you. The testimony of this witness, however, taken in connection with all the other testimony in this cause, invites the submission of the question to you. It is for you then to say whether under all the evidence in this cause you are clearly and fully satisfied that a contract, direct, positive, express and unambiguous, with its terms and

[Shellhammer *v.* Ashbaugh.]

conditions clearly defined, was entered into by this father and son; and this established by a witness who brought them face to face. That in consideration of previous service rendered the father by the son, in working on the farm and boating, the former agreed to give the land to his son, not for a temporary purpose, but absolutely, and to go on and build upon and improve it, and the son thus accepted the grant. That thereupon the son entered into exclusive possession of the land, held it as his own, and erected buildings and made valuable improvements thereon which could not be compensated in damages. This all clearly and satisfactorily established, the case would be taken out of the Statute of Frauds and your verdict should be for the defendant, otherwise your verdict should be for the plaintiffs for the undivided eight-ninths.

"In addition to the controversy about the fact of this alleged contract, it is also a gravely-contested fact whether or not there was such possession taken under the contract, if made, as would be sufficient to take the case out of the Statute of Frauds. As we have seen, taking possession under the contract is essential to the validity of a parol contract. As to this we instruct you that, [if the defendant had gone into possession of the fifty acre tract before the parol contract—if there was such contract—and was in possession of it severally before, and independent of the contract, then this case would be taken out of the Statute of Frauds.

"But if John was jointly with his father in possession of the entire farm before the contract, and upon making thereof went into separate possession of these fifty acres, the land in dispute, pursuant to the contract, and continued to hold it separately, and apart and distinct from the remaining part of the land, it would constitute a sufficient possession.] If, however, John simply continued, after as before the alleged contract, to hold the fifty acres in common with a tenancy of the entire farm, then it would not be such possession as would take the case out of the Statute of Frauds, even if the evidence established the fact of the contract.

"It is also proper to remark that you must be satisfied that the contract was an actual sale, in order to entitle the defendant to your verdict.

"If on the father's part it was only the declaration of an intended purpose, something he meant to do, but did not in fact do, it would not be sufficient to entitle the defendant to your verdict."

The verdict was for the defendant.

The plaintiffs took this writ and, inter alia, assigned for error the refusal of plaintiffs' point and the portion of the charge in brackets.

*Jacob Freetly* and *J. Gilpin*, for plaintiffs in error.—The evidence was not so positive, clear, definite and satisfactory as to

[Shellhammer v. Ashbaugh.]

justify its submission to the jury: Poorman v. Kilgore, 2 Casey 372; Irwin v. Irwin, 10 Id. 525; Overmyer v. Koerner, 2 Weekly Notes 7; Moore v. Small, 7 Harris 469.

To take a parol contract for the sale of land out of the operation of the Statute of Frauds: 1. The contracting parties must be brought face to face; 2. The land must be clearly designated; 3. Open, notorious and exclusive possession must be taken and maintained under the contract; 4. The evidence must be clear, direct, positive and unambiguous; 5. There must have been such part performance as cannot be compensated in damages: Moore v. Small, 7 Harris 469; Postlethwait v. Frease, 7 Casey 472; McKowen v. McDonald, 7 Wright 441; Overmyer v. Koerner, 2 Weekly Notes 7. A parol contract for the sale of land will not be taken out of the statute by a possession not delivered under the contract, as where the purchaser was in possession when the contract was made: Myers v. Byerly, 9 Wright 368. A tenant in possession cannot buy from his landlord by parol: Hill v. Myers, 7 Wright 172; McKowen v. McDonald, supra; Christy v. Barnhart, 2 Harris 261.

Clearing and fencing land, erecting farm buildings, planting an orchard, &c., by the son in pursuance of his parol contract, were such improvements as could be appraised and compensated in damages, and would not therefore take the case out of the operation of the statute: Cox v. Cox, 2 Casey 383; Toe v. Toe, 3 Grant 74; Blakslee v. Blakslee, 10 Harris 237; Overmyer v. Koerner, supra; McKowen v. McDonald, supra.

*Golden* and *Painter*, for defendant in error.—This case was not within the Statute of Frauds: Milliken v. Dravo, 17 P. F. Smith 230; Moss v. Culver, 14 Id. 414; Hugus v. Walker, 2 Jones 175; Collins v. Collins, 2 Grant 117; McGibbeny v. Burmaster, 3 P. F. Smith 332.

It would be inequitable to rescind a parol contract of sale in which the terms, the subject, its boundaries and quantity were precise, and possession was taken in pursuance of it, and valuable improvements made: Syler v. Eckhart, 1 Binn. 378; Eckert v. Eckert, 3 Penna. R. 362.

Mr. Justice WOODWARD delivered the opinion of the court, January 2d 1877.

The third error was improvidently assigned. By a clerical error in copying the charge, the court were made to say: "If the defendant had gone into possession of the fifty acre tract before the parol contract, if there was such a contract, and was in possession of it, severally and independent of the contract, then this case would be taken out of the Statute of Frauds." Of course no such instruction could have fallen from the lips of a judge so accurate

[Shellhammer *v.* Ashbaugh.]

as the President of the Common Pleas, and no official certificate was necessary to prove that the word "not" had been inadvertently omitted in the concluding clause of the sentence, by the clerk who transcribed the charge.

This contest has arisen out of a parol contract alleged to have been made between a father and a son. In such a contest, it was said in Ackerman *v.* Fisher, 7 P. F. Smith 457, clearer and stronger evidence is required of the father's intention to part with the ownership of property, than is required in cases of parol contracts between strangers in blood. There are obvious reasons for this distinction. The circumstances of families are subject to constant change. The pecuniary relations between a father and his several children may shift not only from year to year, but from month to month. The promise to give an estate to a child may have been founded on reasons involving anticipations never realized or plans never executed. Financial embarrassments, an increase in the number of the members of his family, the intervention of new duties, or the misconduct of the child may justify a change in the father's purpose. In any such case there would be manifest injustice in imputing to loose declarations of intention the binding efficacy of a contract. "Nothing is more common," Judge STRONG, said in Ackerman *v.* Fisher, "than that a father speaks of a farm on which he has placed a son, as the son's farm, or a house in which he permits his son to live, as the son's house. It is every day's occurrence that a father speaks of having given a lot of ground to a son, when it was plain there was no intention to transfer the ownership. And such language is not confined to parol gifts. When a father says, I sold such a piece of real estate to my son, he generally means no more than that he agreed the son might have it for a consideration." The rule is settled, therefore, that as between father and child, the evidence of a gift or sale must be direct, positive, express and unambiguous; that its terms must be clearly defined, and that all the acts necessary to its validity must have special reference to it and nothing else: Poorman *v.* Kilgore, 2 Casey 365. In Moore *v.* Small, 7 Harris 461, it was ruled that to have effect the contract must have been so far executed as to make it unjust to rescind it, and must be so definite in its terms as to enable a court of equity to decree its specific performance. In that case a son set up a parol gift from his father, and the improvements the son had made, were relied on to take the contract out of the operation of the Statute of Frauds. It was said that the son, like any other purchaser, must prove the contract; must prove that the land was clearly designated; that open, notorious and exclusive possession was taken and maintained under and in pursuance of the contract; and that the improvements which constituted the consideration were made on the faith of the promised conveyance.

[Shellhammer v. Ashbaugh.]

Tried by these rules, the testimony of George Knepshell, under which the court below felt obliged to submit the decision of the cause to the jury, utterly failed to establish the elements of a valid contract.   He said that in March 1860, he was on the land in dispute where William Ashbaugh, the father, and John Ashbaugh, the defendant, were working on the house in which John now lives. He worked with them during an afternoon.   He described what occurred in these words : " William Ashbaugh told me as we were going across the fields that he would give John fifty acres, and when we got up to the fence, we sat on it, and he said this fence was to be the line until they would get matters fixed up and the land paid for.   He said the land north of the fence was to be John's ; said he had given it to John ; said John was the only child that helped him to boat and make money, and he must give him a compensation ; that he had no other way.   He said he was helping John to put up the house.   William Ashbaugh told Henry Ashbaugh and me in 1866 that he had given John the fifty acres, the Wightly tract that he and John had bought.   He said John helped him to build his barn, and when he got things fixed he would run the line and make him a title.   John was not present at the whole of this last conversation.   He was present at the first conversation, but said nothing.   The old man and John talked about this contract among themselves.   At the time we were working at the house the old man said John could build the house and improve and use it as he pleased ; he had given it to him as his own, and he could use it as his own. John had lived there since 1860, and claimed it as his.   John claimed the ownership of fifty acres, and farmed down to the fence.   John and his father talked of the extent of the boundary."   The witness added on cross-examination : " John raised crops on old piece after ; farmed on other parts of old place after that, and had before that ; can't tell how they farmed.   John and his father worked at the house the day I was there ; did not say when he had given John the place ; said John had helped him to buy the Wightly place, and he had given it to John to compensate him."   In all this where is there proof of a contract of which specific performance could be decreed?   What constituted the consideration ?   In 1860 William Ashbaugh said John had helped him to boat and make money.   In 1866 he said he had given him the Wightly tract which he and John had bought because John had helped him to build his barn. It may be from the concluding sentence of Mr. Knepshell's testimony that the fact that John had helped to buy the Wightly tract was stated in 1860 to be one of the reasons for the gift.   But the evidence does not show any amount that was advanced or the value of any services that were rendered.   And it does not show that any debt was due to John.   For all that appears, the statements of the father may have been the expression of an intention to make a voluntary conveyance of the land in compensation for voluntary

[Shellhammer *v.* Ashbaugh.]

services of the son.  The boundaries of the tract were not designated.  The fence was a temporary line, and the location of the fifty acres was to be ascertained by a survey to be subsequently made. The testimony as to possession was equally indefinite and defective. The defendant had farmed the whole tract for his father, including the fifty acres, before the conversation in March 1860 was had.  So far as the statements of the witness throw light on the subject, he continued to farm it in the same way afterwards.  It is true he moved into the new house, but nothing indicates that any change whatever was made in his possession of the land or in his relations with his father in consequence of the conversation which is relied on to establish the contract

By the other evidence given on behalf of the defendant, his claim is stripped of every semblance of plausibility.  So lately as 1867 or 1868, William Ashbaugh told David Beck that "he would give John the fifty acres, providing he did not do as some of the rest of the heirs, go against him."  It is clear from the testimony of Mr. Beck and Michael Sproul that the defendant worked the fifty acres as well as the rest of the farm, after he moved into the new house, as he had done before.  Beck said : " William Ashbaugh told me John was living there to crop for him over the whole farm.  He cropped both pieces for the old man."  Sproul said : " I know that John did his farming up till and before that time (1869).  He gave the old man two-thirds of what he raised on the whole farm."  James Zill testified that four or five years before he was examined, he helped to build fences on the fifty acre piece, and William Ashbaugh paid him.  With the exception of the amount with which William Linden charged him for twenty-five peach trees, there was no evidence of the expenditure by the defendant of a single dollar for the improvement of the property.  For the peach trees he bought and for the labor he performed he could be amply compensated in damages. It is certain that in view of the Statute of Frauds, no contract has been established under which he can assert title to this property, for the case is destitute of adequate evidence of an existing consideration, of an adjustment of the boundaries of the land, and of the change of possession which the law requires.  The first point presented by the plaintiffs covered the whole ground of this controversy, and ought to have been affirmed.

Judgment reversed, and *venire facias de novo* awarded.