STORY, appellant, *v.* BLACK ET UX., respondents.

PRACTICE — *Presumptions in favor of findings — Point and reason of objection must be saved, to make appeal effectual.*

Findings of fact by a court will not be disturbed by an appellate court, any more than verdicts of a jury, if supported by competent testimony.

The appellate court only reviews what has been passed upon by the court below, and no objection to testimony will be heard in the appellate court for the first time.

The objection saved must state the point and the reason therefor, and this cannot be *irrelevancy* in the district court, and *incompetency* in the supreme court.

PAROL GIFT OF LAND — *When good — Consideration.*

A parol gift of land from father to son, accompanied with notorious and exclusive possession of the latter, with full knowledge of possession and of permanent improvements made by the son, is such a case as does not come within the statute of frauds, and courts of equity will protect the title of such a donee.

If the title by gift, under such circumstances, is good in the donee, he would have the right to exchange such gift property for other property, and the same equities would follow and attach to the latter.

If the title of the child would be good against the parent, it would be equally good against any creditor of the parent, who could only succeed to such right as the parent had.

Anything detrimental to promisee, or beneficial to promisor, is a good consideration for a promise.

The lien of a judgment does not attach to the legal title to the exclusion of a prior equitable title.

*Appeal from First District, Gallatin County.*

J. J. DAVIS, H. N. BLAKE and SANDERS & CULLEN, for appellants.

I. This is an action of ejectment for lots 16 and 17, in block " A," of Black's addition to the town of Bozeman. Plaintiff claims title by virtue of a sheriff's deed to said property, he having been the purchaser thereof at a sheriff's sale of the same, upon execution issued out of the district court of Gallatin county, in the case of *Nelson Story* v. *Leander M. Black,* said action having been commenced on the 28th day of February, A. D. 1878, and

an attachment therein having been duly issued and levied upon said property on the 10th day of July, A. D. 1878.

The claim of defendant is based upon an alleged gift of a certain other piece of property in Bozeman, designated in the transcript as the "Koch property," by the said Leander M. Black to the defendant Rosa G. Black, his daughter-in-law, upon the intermarriage of said defendants, August 31, 1875.

The defendant M. M. Black testifies that, upon the occasion of a reception following his marriage, "my father, Leander M. Black, took me one side and congratulated me, and told me he had presented Rosa, my wife, with the Koch property — that the deed for the same was lying on the piano in the parlor, with the other presents." See Transcript, p. 17.

The witnesses Rosa G. Black, James D. Chestnut, L. J. P. Morrill, Robert P. Vivion, A. Lamme and C. P. Blakely testified that they were present at the reception mentioned; that it was the general talk and understanding that Mr. L. M. Black had presented the Koch property to the defendants, and that an envelope was seen upon a piano on which the wedding presents had been deposited, on which envelope were the words, "Deed to house and lot, presented by L. M. Black." Transcript, p. 25.

Here the deed seems to drop out of this case, if we except the testimony of Mr. L. M. Black, who is unable to remember whether he made any such conveyance, or any conveyance whatever, of said premises to the defendants, or either of them. Transcript, p. 44.

The defendants took up their residence in the premises, and occupied them until the defendant Rosa G. Black started upon a visit to the states. During her absence in the states, and sometime during the latter part of June or first of July, 1877, the defendant M. M. Black chanced to meet his father on the Yellowstone, near Countryman's ranch, and there, it is claimed, an ex-

change was made of the Koch property for the premises now in controversy. No deeds passed either way, and the transaction rested in parol from that time until the 26th day of June, 1878, when the defendant Rosa G. Black received a deed for said premises from Mr. E. W. Toole, to whom Mr. L. M. Black had previously conveyed said premises, with other real property in Bozeman, by deed of bargain and sale, bearing date on the 3d day of May, A. D. 1879, being long after the attachment of said premises by plaintiff.

II. There is no evidence here to support the first finding of fact made by the court, that L. M. Black executed to the defendant Rosa G. Black a deed of the Koch property. In the first place, before any secondary evidence could be given of the existence or contents of such a deed, its loss must be accounted for. Code Civ. Proc. sec. 609.

It being claimed that such a deed was once in existence, the court should have required its production, or if it had been lost or destroyed, proof of such loss or destruction, before permitting any proof of its contents whatever. There is no need of authority to support this proposition.

III. Had it been shown that the "yellow envelope" which is proven, had been destroyed with its contents, still there is no proof here of the existence or of the contents of any deed to the Koch property from L. M. Black to the defendants, or either of them. No witness testifies that he ever saw such a deed, and there is consequently no attempt to prove its contents. If the loss of the deed had been shown, then the parol proof should show that the deed had been duly executed according to law, and, substantially, all of its contents. *Edwards* v. *Noyes,* 65 N. Y. 125; 1 Wharton's Ev. sec. 140, and cases there cited.

IV. There being no proof whatever of any conveyance in writing, of any kind or character, to the defendants or either of them, there was not, and could not be, any gift

of the said Koch property to defendants. To constitute a valid gift *inter vivos*, it must be absolutely and completely executed, so as to leave no *locus pœnitentiœ* behind, and it never can be merely executory. 7 Johns. (N. Y.) 26; *Irish* v. *Nutting*, 47 Barb. 370.

A verbal gift of land is wholly invalid, and vests no right, legal or equitable, in the donee. *Rucker* v. *Able*, 8 B. Mon. (Ky.) 566; *Collins* v. *Collins*, 2 Grant (Pa.), Cas. 117.

The taking possession of the property by the donee, and making permanent and lasting improvements, furnishes no ground for enforcing the promise. *Ridley* v. *McNairy*, 2 Humph. (Tenn.) 174; 6 U. S. Dig. F. S. tit. Gift, p. 776, sec. 28.

V. This brings us to a consideration of the pretended exchange of the Koch property for the Randall property, being the premises now in dispute. This unwitnessed exchange of property seems to have rested in parol on both sides, and, so far as these defendants are concerned, no conveyance of the Koch property by them is shown to exist. If they ever had any right, title or interest in that property, they have it yet. The re-delivery by a grantee to his grantor of the deed of conveyance by which the grantee held title, or the destruction of such deed, does not re-transfer the title. *Kearsing* v. *Kilean*, 18 Cal. 492; *Lawton* v. *Gordon*, 34 Cal. 38; *Bowman* v. *Cudworth*, 31 Cal. 149; *Washington* v. *Ogden*, 1 Black, 450; *Cawn* v. *McNulty*, 39 Pa. St. 473; Browne on the Statute of Frauds, 859.

If defendants had made such an exchange as the one testified to, it would have been within the statutes of fraud and void. *Purcell* v. *Miner*, 4 Wall. 513.

VI. The deed to Toole is a deed of bargain and sale, and is an implied warranty on the part of L. M. Black that previous to the execution of such conveyance he had not conveyed the same, or any right, title or interest therein, to any other person. R. S. p. 445, sec. 227.

There is no evidence showing or tending to show that Mr. Toole was a trustee, or that any trust was or was intended to be created in said premises in favor of defendants or any one else.    Such a trust could only have been created in writing.    R. S. p. 435, sec. 160.

VII.  But if such trust had been created and executed, as it is pretended in this case, the same would have been void as against the rights of existing creditors, and the record very clearly shows that the plaintiff was, at the time of the transfer to Toole and the transfer by Toole to the defendants, a creditor of said L. M. Black's in a very large amount.    There is no conflict in the authorities upon the proposition that a mere voluntary conveyance, such as this was, is void as to existing creditors. *Taylor* v. *Staples,* 5 Am. Rep. 556; 1 Story's Eq. Jur. secs. 355–57; Bump on Fraudulent Conveyances, p. 288 *et passim.*

CONCLUSION.— It is manifest that all of the right, legal or equitable, which these defendants have in the premises in controversy, is such as they derived from the voluntary deed given them by Mr. Toole, without any consideration whatever to support it, and bearing date on the 29th day of June, 1879.    As this title would have been wholly insufficient in the hands of Mr. Toole as against the rights of this plaintiff, so it must be worthless and valueless in the hands of his grantees.    It is also obvious from this record that every fact and circumstance which could in any way benefit the defendants was brought out upon the trial below.    A new trial is asked for on behalf of plaintiff, but this record renders it so evident that defendants can present no valid defense to his cause of action, that we respectfully submit that it becomes the duty of this court to reverse the judgment of the court below and order a judgment to be entered therein for the plaintiff, in accordance with the prayer of his complaint.

E. W. & J. K. TOOLE, for respondents.

Before proceeding to answer the points presented by counsel for appellant, as set forth in their brief, we deem it proper to call particular attention to some uncontroverted facts, as disclosed by the record, and which we insist are conclusive of this case.   It appears as a fact uncontradicted, that, if the deed to the Koch property never was executed and delivered to defendant Rosa G. Black by L. M. Black, herself and husband were led to believe it was, and entered into possession accordingly, and made valuable and permanent improvements upon the strength of it.   The oral agreement to exchange the property for what is known as the Randall property — being the premises in controversy — is established by the uncontradicted testimony of three witnesses, and is made one of the findings of the court.

That in pursuance of the oral agreement, the respondents rendered up possession of the Koch property and the improvements upon it, and were let into possession of the property in controversy, and, relying upon such agreement, made valuable and permanent improvements upon the same in good faith, which facts are also made one of the findings of the court.   Upon an overwhelming preponderance of testimony, the court also finds that the said L. M. Black was worth over $75,000, at this time. After the oral agreement to exchange was made, possession taken and valuable improvements placed upon the premises in question (as above set forth), the appellant attached the same, obtained judgment, and sold it under an execution issued upon the judgment.  The attachment, judgment, sale and purchase by appellant took place while the respondents were so in the actual possession and occupation of the property, under whatever equitable title or claim they had to it.   Here, then, we have the claim of the respective parties to these premises from the time appellant acquired his first right by attachment, if

he acquired any, up to the time of his purchase at sheriff's sale, and the receipt of the deed thereunder.

If respondents have a superior title to the property under the uncontroverted state of facts, then all the errors assigned are insufficient to work any injury to appellant, and he cannot prevail.

In this connection it may also be remarked, that, before the sale of the property, L. M. Black had conveyed it, with other property, under a general description, to E. W. Toole, who agreed, upon ascertaining the correct description of it, to convey it to respondent Rosa G. Black. That in pursuance of this trust, the said E. W. Toole, before the execution sale of the property, conveyed the same to the *cestui que trust*, by reason of which it is claimed that the equitable title mentioned, which was good against appellant, became merged in the legal title, so that at the time of the commencement of this action appellant had no title whatever to the property in question, so that it was not necessary for respondents to ask for or obtain any affirmative relief. Viewing the case as we must, to wit, that the exchange for or gift of this property (whichever it may be regarded), followed by delivery of possession, and the construction of valuable and permanent improvements upon the faith of it, the donor at the time being solvent, created such an equitable estate as would defeat the claims of a subsequently attaching creditor.

It would seem useless to proceed to a discussion of the questions presented by appellant's brief. But as the points made by counsel seem to be regarded by them as vitally important, and are so urgently insisted upon, we will discuss them *seriatim*.

I. The first point made by counsel is confined to the admissibility of certain oral testimony, which can in no manner affect the merits of the controversy. If we are correct, that no writing, under the circumstances of the

case, was necessary, and that the delivery of possession, and improvements made in pursuance of a gift or exchange of property, takes it out of the statute of frauds, it will be a complete answer to all that is said under this head.   Upon this question we refer the court to the authorities cited further on in this brief, where the proposition more properly arises.

II. The position that there was no evidence of the loss of the deed from L. M. Black to respondents, for the Koch property, so as to render oral proof of its contents competent, is untenable: First, because the deed or title to this piece of property is not in question; second, because no objection was made upon this particular ground. Where such an objection is made, the point of the objection and exception must be specially stated, so as to afford the opposite party an opportunity to remove the objection, if it be in his power to do so, by producing the deed or proving its loss or destruction.   No such objection and exception being had, appellant cannot avail himself of it now.   The citation of authorities upon this proposition is unnecessary.

III. The point made by counsel under this head, in connection with that made in the preceding one, presents the anomalous position of insisting in one breath that the court erred in admitting evidence of the contents of the deed contained in the "yellow envelope," and in the next breath asserting that there was error in not admitting evidence of its contents.   If there was neither proof of its loss or destruction, there was certainly no error of law so far as the admission of testimony was concerned.   As all the evidence shows that the Koch property was a gift, this deed would simply have been the evidence of it, and without which it is claimed that the gift was ineffectual as against the claim of appellants.   But it will be seen that, in the absence of such deed, the respondents entered into possession under the belief that it was a gift, and in good faith made the valuable and permanent improve-

ments mentioned in the findings of the court. If, therefore, the Koch property is to figure at all in the case, respondents had acquired an equitable title to it as against L. M. Black, which could have been enforced against him. Aside from the execution of the deed, the gift was complete; the equities of respondents had attached, and there was no *jus deliberandi* or *locus pœnitentiæ* left. We especially call attention to the authorities hereinafter cited upon this point, where the question is more properly raised and more fully presented. See Record, p. 44.

IV. The propositions presented under the fourth and fifth headings of appellant's brief contain the only vital questions involved in the case, so far as the Koch property figures in it at all. We contend that L. M. Black being solvent at the time of the parol gift of this property, and its validity being recognized by the parties interested, it formed a sufficient consideration between them to support the exchange, accompanied as it was by a change of possession, and substantial and valuable improvements. The evidence shows that the Koch and Randall property — the property in question — were of equal value. Appellant had no claim upon either at the time; it is therefore a matter of no concern to him. His claim, if any, was upon the Randall property, and, as we shall presently see, it is of no consequence to him, in the absence of actual fraud, whether the conveyance, proper between the parties, was ever executed or not. The respondents being in the actual possession and occupancy of the property was notice to the appellant of all their equities in the premises. So far, then, as he is concerned, aside from the fact that he was a judgment creditor, and not a *bona fide* purchaser, equity treats that as done which ought to be done; and if, in equity and good conscience, L. M. Black could have been compelled to make a deed to the respondents of the property in controversy at the time appellant attached it, the right could not be impaired by such attachment.

That one who is a judgment creditor in purchasing at a sale under his judgment takes the property subject to all the rights and equities of third parties which were capable of being enforced against the judgment debtor, see 7 Wall. 218; *Chumasero* v. *Viall*, 3 Mont. 376; *Cross* v. *Zane*, 47 Cal. 603; 1 Paige Ch. 125; 3 McLean, 148, 362; 7 Ohio, 21; 10 Ohio, 415.

Besides, the possession of respondents was notice to appellant of all their rights and equities to the property in question. See *Hughes* v. *United States*, 4 Wall. 232; *Landis* v. *Brant*, 10 How. (U. S.) 424; *McKenzie* v. *Territt*, 15 Ohio St. 162, 168; *Jones* v. *Marks*, 47 Cal. 242 *et seq.*; *Ray* v. *Birdsey*, 5 Denio, 626; 22 N. Y. 567. Further, there *is no such plea* in this case. 4 Wis. 354.

V. This brings us to the consideration of the question which, as claimed heretofore, is the only meritorious one involved in the case. If the gift by parol to the Koch property was good, all of its elements and properties as such were imparted to the exchanged property in question. That a parol gift of a father to a son, where the son, in pursuance of it, enters into the possession of the property and makes valuable improvements upon the premises, will be upheld, the father being solvent at the time. We respectfully refer the court to the following authorities, which, we insist, are decisive of the case: *Hardesty* v. *Richardson*, 22 Am. Rep. 57; *Hardesty* v. *Richardson*, 44 Md. 617; *Freeman* v. *Freeman*, 43 N. Y. 34; 8 Am. Rep. p. 665 (see note); *Kurtz* v. *Ritmer*, 55 Ill. 514; 3 Am. Rep. 657; 13 Ves. 147. Also, Browne on Statute of Frauds, 465–467; 6 Watts (Pa.), 509; 3 Ves. 713; 3 Watts (Pa.), 203; 1 Binn. 378; 19 Am. Dec. 398, 399, and especially note to this case; *Brown* v. *Pierce*, 7 Wall. 218.

Numerous authorities in addition to the above might be cited in support of this position, but we claim these sufficient for the purpose. The authority cited by counsel in 4th Wallace, 513 *et seq.* *(Tursell* v. *Mines)*, to sup-

port a contrary view, is in perfect keeping with the principles heretofore announced by us. The court say, in speaking of a parol exchange of lands, p. 519: "If either party had delivered a deed in execution of the trade or bargain, and the other had refused to fulfil his part by making a proper conveyance; or, if valuable improvements had been made by the party in possession, there would have been a case for a decree of specific execution." This is precisely what we contend for. The case cited was devoid of equity, while the one at the bar is replete with all the elements essential to constitute a perfect equity. To the same effect is the decision of the supreme court of the United States at its present term, 1882. *Bigelow* v. *Cures*, Central Law Journal, December 15, 1882, p. 479.

Even if the equities of respondent were not capable of being enforced against L. M. Black, he alone could take advantage. The moral obligation to convey was superior to the lien of the appellant as a judgment creditor, and he cannot thus be made to violate a duty binding upon his conscience. Browne on Statute of Frauds, 128, 129, 130 and 135; *Murirs* v. *Dodge & Wiley*, 15 Ohio, 569.

It is nowhere alleged that the gift in question was made to hinder, delay or defraud the creditors of L. M. Black, and, as disclosed by the record, there would be no foundation, in fact, for any such allegation or claim. The intentions and object of the exchange and gift were commendable. They were accepted in a like spirit by respondents, whose equities attached prior to appellant's. The transaction does not come within any of the provisions of the statute of frauds, declaring it void as to creditors. That it should be upheld under such circumstances, we cite the court to the following authorities: 15 Ohio, 571; 15 Minn. 44; 20 Ohio St. 68; 11 Ohio, 455.

If, then, the view we take of the case is correct, all the errors assigned by counsel for appellant are utterly immaterial. The evidence of the numerous witnesses as

to the "yellow envelope," the contents of it and the inscription upon it, would be perfectly harmless if the gift could be made effectual and valid by the delivery of possession to, and occupancy and improvement of the property by, the respondents, as it was occupied and improved by them.  Nor could the general talk that the Koch property was a bridal present, in any manner affect the question.  There is no conflict in the evidence as to the gift by L. M. Black of the property; and, if there were, it would have been proper corroborating testimony.  Sec. 3, Abbott's National Digest, 297, 95.

The authorities cited by counsel for appellant in reference to unexecuted gifts *inter vivos*, and a naked parol agreement to exchange the property so given for that in controversy, are good law, but they are inapplicable to the case.  The earlier gift to respondents is taken out of the operation of the rule by reason of the delivery of possession and the construction of valuable and permanent improvements upon it.  In the second instance, by an actual change of possession of the respective pieces of property; the sale and conveyance by Black of that received by him, and the occupancy and improvement by respondents of the property delivered to them.  At this time, as we formerly suggested, there was no *jus deliberandi* or *locus pœnitentiœ* left.  But, it is contended by counsel for appellant, that the deeds were never executed, and that consequently this gives the donor or barterer the right to deliberate, or is cause for retraction.  This is not the case.  Had the deed been executed; a perfect legal title would have been established, and no equitable relief whatever would have been required.  If there is no *jus deliberandi* or *locus pœnitentiœ*, courts of equity always enforce the specific performance by compelling a conveyance as contemplated by the parties.  To say that the failure or refusal to execute the deeds created a *jus deliberandi* or *locus pœnitentiœ*, and that equity would never enforce a contract in this situation, would forever

conclude the investigation or enforcement of any other than purely legal titles to property, and dispense with the salutary principles of equity jurisprudence which have been recognized for centuries both in England and America. The correct doctrine is that the delivery of possession, and the erection of valuable and permanent improvements upon the property so delivered to respondents, and the sale of the exchanged property by L. M. Black to Koch, took away the *jus déliberandi* or *locus pœnitentiœ*, and in accordance with well settled principles, respondents could have invoked the aid of a court of equity, and have compelled a conveyance thereof; this was the *status* of the property when attached by the appellant. At the time of the gift and exchange of the property, and the improvements that were made on the strength thereof, L. M. Black, as shown by the records and findings, was a wealthy man. This is the time the right of respondents attached and became fixed. The gift to a child by a parent in condition to make it, without infringing upon the equitable rights of creditors, importing as it does a consideration of natural love and affection, will certainly not be regarded as inferior to that which lies in a sordid desire for the acquisition of filthy lucre. The appellant and his rights stand upon contracts based upon financial considerations. In these he will be protected. But the courts will not allow him to avail himself of rights he never possessed, and become the instrument in subverting cherished hopes, and dissipating just and humane expectations.

But it is contended also, by counsel for appellant, that there was no writing creating a trust in Toole, and that as the conveyance from him to respondents was made after the attachment by appellant, it is void as to him. The sophistry of this is too transparent to require argument. If the rights of respondents were good against the attachment at the time it was made, why should it concern him whether they get the legal title under the

admissions in the answers of L. M. Black, made in this case, which we have shown could not be avoided by a creditor, or through one who in equity and good conscience was bound to convey. It united the equitable with the legal title, and in no way affected the rights of appellant. See 15 Ohio, 572, *supra.*

Whether there was a gift by deed, or exchange by deed, we contend is of no importance in the case. There was a possession delivered, and improvements of a valuable and permanent nature made upon the faith of the gift and exchange. Being so done in good faith by respondents, it is immaterial what the real intention of L. M. Black was. It would be as much a fraud upon their rights to allow him, or any one, to defeat the intended gift, as to retract a fraudulent or pretended gift.

We submit that, upon the whole case, there can be no question but that the merits are with respondents, and that the judgment should be affirmed.

WADE, C. J. This is an action in the nature of ejectment to recover possession of lots 16 and 17, in block A, of Black's addition to the town of Bozeman. Applicant claims by virtue of a sale on execution and a sheriff's deed, and the respondents by reason of a parol gift from father to daughter-in-law.

On the trial the court found the following facts:

1st. That on the 31st day of August, A. D. 1875, the said Leander M. Black, father of defendant Madison M. Black, executed to the defendant Rosa G. Black a deed to what is known as the Koch property, which deed was delivered by placing it in an envelope and depositing the same upon the piano, among the bridal presents given to the bride on the eve of the marriage, in consideration of the natural love and affection of a parent to a child.

2d. That, by virtue of said deed, defendants entered upon said property, went into possession and occupation thereof, and made valuable improvements thereon.

3d. That they remained so in possession and occupation of the same until about the 1st day of July, A. D. 1877, when, by virtue of an exchange of property with the said L. M. Black, they, in pursuance thereof, entered into the actual possession and occupancy of what is known as the Randall property (the property in question), and have ever since had possession of and occupied the same.

4th. This exchange of the Koch property for said Randall property was made by the parties in good faith, and accepted by the defendants and the said Leander M. Black as a *bona fide* transfer of said property, and all the rights, title and interest therein, from one party to the other.

5th. That no deed or memorandum was made in writing at the time of the exchange and transfer as aforesaid by the said parties.

6th. That upon receiving possession of the said property under said exchange and transfer, the said defendants, on account thereof, and relying in good faith upon the same, made valuable and permanent improvements upon the said property, and now occupy the same.

7th. That after said exchange and transfer, the said Leander M. Black conveyed by deed to E. W. Toole the said Randall property in trust for these defendants, and the said E. W. Toole, in pursuance of his trust, conveyed by deed the same to said defendants; and that soon after such exchange of property, the said Leander M. Black conveyed the property so originally deeded to defendants, and by them exchanged as aforesaid, to one Peter Koch.

8th. That said Leander M. Black, at the time of making said deed of gift to defendants, was worth about $100,000, with small, if any, indebtedness.

9th. That said Story thereafter became a creditor of said Leander M. Black, and, upon a judgment in his favor against him, sold the property under execution issued thereon and became the purchaser of the same at such sale, and received a sheriff's deed therefor. That said

Story had actual notice of the possession of said property by defendants, and that at the time of the sale, said sheriff read to the bidders, and in the hearing of said plaintiff and those present, a notice setting out the rights of said defendants in the premises then to be sold, being those in controversy.

Findings of fact by the court, like a general or special verdict, will not be disturbed by the appellate court, if there is competent evidence to support them.

Questions presented by this appeal have relation exclusively to the testimony offered and received upon the trial, and a statement of the same will disclose the nature of the case and the relation of the testimony to the findings of fact.

Madison M. Black, one of the defendants, testified as follows: "I married Rosa G. Black, one of the defendants, at Bozeman on August 31, 1875. On the night of this day a reception was held at the North Pacific Hotel in Bozeman, and my father, Leander M. Black, took me one side and congratulated me, and told me he had presented Rosa, my wife, with the Koch property; that the deed for the same was lying on the piano in the parlor, with the other presents, and directed me to take possession of the same, which I did that evening, and remained in possession of the same from that night, August 31, 1875, until some time in July, 1877. That upon the faith of the gift, I put permanent and lasting improvements upon the said property, by beautifying and ornamenting the grounds with trees and shrubbery, and by bringing water upon the same and digging ditches for that purpose. I also painted the house on the outside, and papered and painted on the inside, and built a barn on the back of said lot.

"Some time the latter part of June or the first of July, 1877, I was coming from Miles City to Bozeman; I met my father near Countryman's place on the Yellowstone, and he said that he desired to exchange the Koch

property with me for the Randall property. We talked the matter over and agreed upon the exchange. I informed my wife, and she was satisfied to make the exchange, and we did so exchange the Koch property for the property in controversy, and I immediately took possession of the same, and my wife and myself have been continuously in possession from that time to the present time, and are in possession now. At the time of the exchange, my father agreed to make my wife a deed for the said property, and upon the faith of the agreement to make a deed, and the exchange of the property, we placed upon the property permanent and lasting improvements, amounting, besides my own labor, to the sum of $600.

"Prior to my marriage and the gift of the Koch property on the 31st of August, 1875, my father removed all his furniture, except that portion he gave to me at the time of my marriage, from the Koch property to the Northern Pacific Hotel, and he never occupied it or exercised any control over it from and after August 31, 1875, until he got it back from us by virtue of the trade and exchange in July, 1877, nor did he ever exercise any ownership or control over the Randall property from July, 1877, up to this time.

"In 1875, at the time of the gift, my father had at least $100,000 in cash and personal property, besides his real estate, which was valued and was worth $75,000. At that time there were no debts, liens or incumbrances whatever against my father that I know of. I was his agent at the time and in a situation to know his financial condition and standing."

Madison M. Black, Rosa G. Black, James D. Chestnut, L. J. Morrill, Robt. P. Vivion, A. Lamme and C. P. Blakely testified as follows: "That they were present at the Northern Pacific Hotel, in Bozeman, on the night of August 31, 1875, at a reception following the marriage of said defendants on that date; that it was the general talk and understanding at the time that Leander M.

Black, the father of said Madison M. Black, had given to the defendants as a wedding present the land and dwelling-house thereon, described as Black's residence in the answer, and situate in Bozeman; that an envelope was seen upon a piano, on which the wedding presents had been deposited, containing the words: 'Deed to house and lot, presented by L. M. Black,' and that none of said witnesses saw any conveyance or deed of said property to any parties."

The plaintiff objected to the introduction of this testimony on the ground that the same was *irrelevant* and *immaterial*, and *insufficient* to convey or affect real property, and saved an exception.

Leander M. Black testified: "Madison is my son, and Rosa G. is his wife. They were married at Bozeman in August, 1875. I was present at the wedding. I was the owner of a lot on corner of Babcock and Black streets, Bozeman. It had a frame cottage on it, which, at the time of the wedding, I gave to them (my son and wife) as a wedding present. Notice of this fact was published in one of the Helena papers, I think the Herald, as among the wedding presents. I do not remember whether I made a conveyance to them of said property, by deed, at that time or not. They immediately after the wedding took possession of said house and premises, and occupied the same until about the summer of 1877. The consideration for this present was the natural love and affection I felt for my son. If there was no deed executed and recorded it was simply neglect on my part, as I would have made it at any time, if called upon, but my attention was never called to it. The intent of the gift was to convey the property absolutely, and I so regarded it as conveyed.

"The property was not incumbered at the time the gift was made. My liabilities did not exceed my assets. I can safely say that I was then worth at least $100,000, over and above all debts, liabilities and exemptions whatever.

"Some time in the summer of 1877 I made a proposition to them to exchange a house and two corner lots, known as the Randall property, in Bozeman, for the one they occupied; and I told Rosa, one of the defendants, at the time, that if they would exchange I would deed the premises known as the Randall property to her individually, giving the title in her name, which I neglected afterwards to do. She and Madison were both satisfied to do this. It was simply an exchange of properties which we all considered of equal value, and there was no difference paid either way. After the exchange I sold the first piece to Peter Koch."

Appellate courts pass upon objections that are raised and properly saved in the court below. If, upon the trial, incompetent or irrelevant testimony is received in evidence without objection, the question of its admissibility cannot be raised in the supreme court for the first time.

Appellants contend that there is no evidence to support the findings of fact made by the court, that Leander M. Black executed to the defendant Rosa G. Black a deed of the Koch property, for the reason that, before any secondary evidence could be given of the existence or contents of such deed, its loss must be accounted for; and for the further reason that, it being claimed that such a deed was once in existence, the court should have required its production, or, if it had been lost or destroyed, proof of such loss or destruction, before permitting any proof of its contents whatever.

The answer to this is that no such objection was made upon the trial. The point of the objection and exception must be particularly and specifically stated, and this to enable the trial court to correct its own errors and to enable the party to remove the objection if possible. For this reason the rule is general, that the appellate court reviews only what the lower court has passed upon. A party cannot permit incompetent testimony to be received

in evidence without objection, and in the appellate court ask to have the case reversed because incompetent evidence has been received.

Neither can he object to testimony upon the trial for the reason that the testimony is immaterial or irrelevant, and in the appellate court object to it for the first time for the reason that it is incompetent. The point of the objection and the reason for it must be stated and saved in the bill of exceptions.

The testimony of Madison M. Black, Rosa G., his wife, and of Chestnut, Morrill, Vivion, Lamme and Blakely, that they were present at the reception that followed the wedding, and heard the general talk that Leander M. Black, the father, had given to the defendants as a wedding present, the lot and dwelling-house thereon, mentioned in the answer and described as Black's residence, and that they saw an envelope upon a piano, on which the wedding presents had been deposited, containing the words: " Deed to house and lot, presented by L. M. Black; " and that none of said witnesses saw any conveyance or deed of said property to any parties, was objected to for the reason that the same was *irrelevant*, *immaterial*, and *insufficient* to convey or affect real property.

It was not irrelevant or immaterial to prove the existence of this deed, and as preliminary to and as tending towards such proof, it was competent to establish the fact that a paper or envelope, marked as described, was seen among the other wedding presents. And if the contents of the deed were proved without objection, it is an error that we cannot reach. The *insufficiency* of testimony does not have to do with its competency, and if competent testimony, or such that we must hold competent because not objected to, supports the finding, it will not be disturbed.

But the question as to the competency or materiality

of the testimony in relation to this deed is not vital to the case. The testimony conclusively shows:

*First.* That on the 31st day of August, 1875, the date of the marriage of his son Madison M. with Rosa G., the father, Leander M. Black, was the owner of property, over and above all debts, liabilities and exemptions, of the value of $100,000.

*Second.* That upon that day, as a marriage gift, he gave to the defendants the house and lot known herein as the Koch property, and that they on that day immediately entered into the exclusive possession thereof, made valuable improvements thereon with the knowledge of the donor, and lived and resided in the house for the period of about two years.

*Third.* That on or about the 1st day of July, 1877, while so in possession of the Koch property, they entered into an agreement with Leander M. Black to exchange the Koch property for the Randall property (the property in question); and that in pursuance of such agreement and exchange of properties (which were of the same value), they entered into the actual possession and occupancy of the Randall property and have ever since held possession and occupancy of the same.

*Fourth.* That this exchange was made in good faith by the parties, and accepted by the defendants and the said Leander M. Black as a *bona fide* transfer of said property, and all the rights, title and interest therein, from one party to the other, but that no deed or memorandum in writing was made at the time of the exchange and transfer aforesaid.

*Fifth.* That upon receiving and entering into the occupancy and possession of the said property under and in pursuance of such exchange and transfer, the defendants on account thereof, and relying in good faith upon the same, made valuable and permanent improvements upon said property with the knowledge of the said L. M.

Black, amounting to the sum of $600, besides the work of the defendants thereon.

*Sixth.* That after said exchange and transfer the said L. M. Black conveyed by deed to E. W. Toole the said Randall property in trust for these defendants, and the said E. W. Toole, in pursuance of his trust, conveyed by deed the same to said defendants; and that soon after such exchange of property the said Leander M. Black conveyed the property he received in exchange to one Peter Koch.

The testimony establishing the foregoing facts is direct, clear and conclusive. It comes up to the requirements that, "in cases of parol gifts or parol sales made by a father to a son, there is peculiar reason why the latter should be held rigidly to the proof of all those facts which courts of equity have been accustomed to regard as equivalent to a written contract." *Harris* v. *Richly,* 56 Pa. 398. "The very nature of the relation (that of parent and child), therefore, requires the contracts between parents and children to be proved by a kind of evidence that is very different from that which may be sufficient between strangers. It must be direct, positive, express and unambiguous. The terms must be clearly defined, and all the acts necessary for its validity must have especial reference to it and nothing else." *Poorman* v. *Kilgore,* 2 Casey, 372.

Here, then, we have the case of a parol gift of land from father to son, proven and established as the law requires, with notorious and exclusive possession taken, retained and continued in pursuance of an agreement to give the same, with full knowledge upon the part of the donor, together with permanent and lasting improvements placed upon the land by the donee upon the faith of the agreement to give, and this with the full knowledge of the donor. I believe that such a possession takes the case out of the statute of frauds, and that the title of the donee will be protected in equity. If this were

not so, the statute to prevent frauds and perjuries would encourage and protect them. Such a title could be enforced as against the donor; and if this is the case, the donee would have the right to exchange his property for other property, and his equities would follow him and attach to his possession of the property so received in exchange.

Says Mr. Browne in his work upon the Statute of Frauds: "A principle analogous to that upon which taking possession·of and making improvements upon the land claimed, protects the claimant from the operation of the statute of frauds in courts of equity, is,applied to gifts of lands, upon the faith of which such possession has been taken and such improvements made, although there is in such cases no *contract* enforceable even at common law, the gift, if strictly such, being without a consideration sufficient to support an action for breach of the promise to give." Sec. 491a, p. 549.

Says Tilghman, C. J., in *Syler* v. *Eckhart*, 1 Bin. 380: "Although the courts are not disposed to extend the principles on which parol agreements concerning lands have been confirmed, farther than they have already been carried, yet they are bound by what has been decided. It has been settled that where a parol agreement is clearly proved, in consequence of which one of the parties has taken possession and made valuable improvements, such agreement shall be carried into effect. We see no material difference between a sale and a gift; because it certainly would be fraudulent conduct in a parent to make a gift which he knew to be void and thus entice his child into a great expenditure of money and labor, of which he may reap the benefit himself."

If, in such a case, the child acquires such an equitable interest in and title to the property as that he can hold it against the parent, so also he can hold it as against any creditor of the parent. The creditor only succeeds to the rights of the debtor. He acquires by attachment

and sale only such interests as the debtor might sell or dispose of for himself.

In *Freeman* v. *Freeman*, 43 N. Y., Grover, J., speaking for the court of appeals, says: "The question then is, whether a parol promise by one owning lands, to give the same to another, will be enforced in equity, when the promisee has been induced by the promise to go into possession, and with the knowledge of the promisor make comparatively large expenditures in permanent improvements upon the land. It is and must be conceded that, if the promise by parol was to sell the land for a valuable consideration to be paid therefor by the promisee, such promise, under this precise state of facts, would be enforced. The ground upon which this equitable jurisdiction is exercised, although sometimes said to be the part performance, really is to prevent a fraud being practiced upon the parol purchaser by the seller by inducing him to expend his money upon improvements upon the faith of the contract, and then deprive him of the benefit of the expenditure and secure it to the seller by permitting the latter to avoid the performance of his contract. In the case supposed there has been no part performance of the contract, strictly speaking, except the taking possession, no part of the purchase money having been paid; and yet the cases are numerous where performance of such contract has been decreed in equity where possession has been taken under the contract and large expenditures upon permanent improvements made. In the present case possession has been taken under the promise and the expenditures upon improvements made; yet it is insisted that equity will not enforce the promise, for the reason that it was to give, instead of having been to sell the land for a valuable consideration. Permitting the promisor to avoid performance operates as a fraud as much in the latter case as in the former, so far as expenditures upon improvements are concerned. The counsel for the appellant insists that there has been no

part performance of the contract to give the land. The answer to this is, that possession has been taken and valuable improvements made upon the faith of the promise. These acts constitute part performance by the respondent. It is true that the plaintiff has done nothing by way of performance on his part. It is not necessary that he should. Part performance by the party seeking to enforce the contract is sufficient. It is further insisted that an executory promise, not founded upon any valuable consideration, is a mere nude pact, furnishing no grounds for an action at law, and that performance of such a contract will not be enforced in equity. This is true so long as the promise has no consideration. Anything that may be detrimental to the promisee or beneficial to the promisor in legal estimation will constitute a good consideration for a promise. Expenditures made upon permanent improvements upon land with the knowledge of the owner, induced by his promise, made to the party making the expenditure, to give the land to such party, constitute in equity a consideration for the promise. The statute of frauds has no bearing upon such a case."

Says Justice Gibson, in *Sowers, Adm'r,* v. *Weaver,* 84 Pa. 267: "That a parol gift from a parent to a child, properly executed by possession and improvement, is valid, notwithstanding the statute of frauds and perjuries, will be found to be the settled law of this state since the case of *Syler* v. *Eckhart,* 1 Bin. 378." See, also, *Stewart* v. *Stewart,* 3 Watts, 253; *Young* v. *Glendening,* 6 Watts, 509; *Bright* v. *Bright,* 41 Ill. 97; *Shellhammer* v. *Ashbough,* 83 Pa. 24; *Lobdell* v. *Lobdell,* 33 How. 347; *Crosbie* v. *McDaniel,* 13 Ves. 147; *Shepard* v. *Bevin,* 9 Gill, 32; *Murphy* v. *Steel,* 43 Texas, 123; *Neales* v. *Neales,* 9 Wall. 1; Parsons on Contracts, vol. 3, p. 359; *Hardesty* v. *Richardson,* 22 Am. Rep. 57; 8 Am. Rep. 665, note; *Koutz* v. *Ritner,* 55 Ill. 57; 3 Am. Rep. 657; 19 Am. Dec. 398, and note.

Applying now the doctrine of the law, as indicated by

these decisions, to the case under consideration, we hold that these defendants, having taken the notorious and exclusive possession of the Koch property, with the knowledge of L. M. Black, in pursuance of his parol gift of the same to them, and made permanent and lasting improvements thereon upon the faith of such gift, with the knowledge of the donor; and having retained and continued such possession with like knowledge, and upon the faith of such gift, they thereby so became the owners of the property as that, at the time they exchanged the same for the Randall property, they might have compelled a conveyance thereof to them from L. M. Black, the donor. And being so the owners, they had the right to sell the property, or to exchange it in good faith for other property, with whomsoever they would and at their pleasure; and when they did exchange it for the Randall property, the transaction was equivalent to a sale and purchase, with possession in pursuance thereof and payment of the purchase money in full. The Koch and Randall property were of equal value. The one paid for the other. By virtue of such exchange the defendants entered into and retained possession of the Randall property, and made permanent and lasting improvements thereon upon the faith thereof, and with the knowledge of L. M. Black.

All this occurred months before Story, the appellant, levied his attachment upon the property in his action against L. M. Black, and hence at the time of such levy the defendants were the owners of the entire equitable interest in and title to the property, and Black had no interest therein that could be reached by attachment or otherwise. At the time of the attachment Black held the naked legal title to the property, but having been fully paid therefor, and the defendants being in possession, he became trustee of the property and held the title in trust for the real owners. His conveyance to Toole, and Toole's conveyance to defendants, was in execution of this trust.

The defendants being in possession at the time of the levy of the attachment by Story, he was thereby charged with notice of all their rights and equities in the premises. *Hughes* v. *United States*, 4 Wall. 232; *McKenzie* v. *Jewett*, 15 Ohio St. 168; *Landis* v. *Brant*, 10 How. (U. S.) 348; *Jones* v. *Marks*, 47 Cal. 242; *Ray* v. *Birdsey*, 5 Denio, 626.

The purchaser at a sale of real property on execution acquires all the right, title, interest and claim of the judgment debtor therein (Code, sec. 329); but he acquires only such right and interest, and he takes the property subject to all the rights and equities of third parties which are capable of being enforced against the judgment debtor. "The rule of *caveat emptor* applies to execution sales." *Chumasero* v. *Viall*, 3 Mont. 379.

Says Clifford, J., in *Brown* v. *Pierce*, 7 Wall. 218: "The correct statement of the rule is, that the lien of the judgment creates a preference over subsequently acquired rights, but in equity it does not attach to the mere legal title to the land, as existing in the defendant at the time of its rendition, to the exclusion of a prior equitable title in a third person."

"Guided by these considerations, the court of chancery will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment debtor had in the estate at the time the judgment was rendered." *How, Petitioner*, 1 Paige Ch. 128; *Ellis* v. *Towsley*, id. 283; *White* v. *Carpenter*, 2 Paige, 219; *Buchanan* v. *Sumner*, 2 Barb. Ch. 181; *Lounsbury* v. *Purdy*, id. 494; *Kirsted* v. *Avery*, 4 Paige Ch. 15; *Averill* v. *Leucks*, 6 Barb. Ch. 27; *Doe ex dem. Strong* v. *Smith*, 3 McLean, 362; *Mason* v. *Wallace*, id. 148; *Bank of Muskingum* v. *Carpenter's Adm'rs*, 7 Ohio, 21; *Daniel Lake* v. *Samuel Doud et al.* 1 Ohio, 415.

The judgment is affirmed. with costs.

*Judgment affirmed.*