PRINCETON MINING COMPANY, respondent, *v.* THE FIRST NATIONAL BANK OF BUTTE ET AL., appellants.

APPEAL. — *Presumption as to findings.* — In the case at bar, tried by the district court without a jury, there was no motion for a new trial. *Held*, that all findings made will be presumed to have been supported by the evidence, and that those refused were not; also, that where no findings appear to have been made upon an issue, that they were in favor of the respondent.

ATTACHMENT. — *Title to land of corporation in which an alien is a stockholder — Alien cestui que trust of realty — Title under execution sale.* — Erlanger, an alien, entered into an agreement with Medhurst to advance the latter money to purchase mining property. The said property was to be acquired by Medhurst and then conveyed to a corporation to be organized. Erlanger was to have an interest of fifty-five and Medhurst an interest of fifteen per cent in the stock of the corporation. Before the formation of the corporation, the First National Bank, one of the appellants, attached, in an action against Medhurst, certain mining property acquired by him in accordance with said agreement; and having obtained a judgment, purchased the property at the execution sale. The bank had notice of the agreement both at the time of its attachment and purchase. Before the sale, but subsequent to the attachment, the respondent herein, the contemplated corporation, was organized and received a conveyance from Medhurst to the said real estate. The sheriff being about to deliver a deed of the property to the bank, the respondent commenced this suit to restrain the delivery of the sheriff's deed, and to quiet its title. *Held*, that the fact of an alien's having an interest in its stock did not affect respondent's title to the land in dispute; also, *semble*, that even were Erlanger a *cestui que trust* of the land, his title would be good as to anybody until office found. *Held*, that the bank, having attached and purchased with notice of the trust, obtained no right as against the respondent. *Held*, also, that Medhurst had no interest in the land that could be set apart to him; and that, inasmuch as the question had not been raised, the court would not decide that the respondent, before seeking equitable relief, should first have refused to issue any stock to Medhurst in order to protect the rights of the bank.

*Appeal from District Court, Silver Bow County.*

KNOWLES & FORBIS, for the appellants.

The attachment created a lien upon all of the ground levied upon thereby, and a subsequent sale under the execution and the deed to which appellant was and is entitled from the sheriff will relate back to the date of the levy of the attachment, and should be considered as though bearing that date. Drake on Attachments, 5th

ed., secs. 224, 225; *Bagley* v. *Ward*, 37 Cal. 121–131; *Porter* v. *Pico*, 55 Cal. 165–174.   The question is presented, What right had Medhurst in the premises attached at the date of the attachment?   He held fifteen per cent of the premises, undoubtedly, for himself, and fifty-five per cent for said Erlanger.   But Erlanger is an alien, and cannot hold unpatented mining ground.   *Tibbitts* v. *Ah Tong*, 4 Mont. 536; *Chapman* v. *Toy Long*, 4 Saw. 28.   The said Erlanger, being an alien, could not be a *cestui que trust* of unpatented mining ground.   He was prohibited from taking the title to such ground, and hence an agreement that Medhurst should hold the same as his trustee was a fraud upon the United States law upon this subject.   Medhurst was, therefore, the owner of the ground.   Perry on Trusts, secs. 65, 131; *Methodist Church* v. *Remington*, 26 Am. Dec. 61; *Leggat* v. *Dubois*, 28 Am. Dec. 413.   The agreement that Medhurst should deed this property to a corporation that Erlanger might name does not help the case.   It is evident that he was to be a stockholder and a member of this corporation.   The conveyance of the mining ground to said corporation was to be for his benefit.   He was to receive stock in lieu of his ground.   It was then only a change in the form of his property.

A private corporation is but an association of individuals united for some common purpose, and permitted by law to use a common name and to change its members without a dissolution of the association.   *B. & P. R. Co.* v. *Baptist Church*, 108 U. S. 330.   The relation between such a corporation and its members is practically that of trustee and *cestui que trust*.   Morawetz on Private Corporations, 1st ed., sec. 237, p. 381; Angell and Ames on Corporations, 559.   The law ought not to be that persons prohibited from holding title to unpatented mines can form a corporation, and have it hold for them the title they cannot.   6 American Corporation Cases,

228.   The agreement in the declaration of trust was an agreement between Erlanger and Medhurst, and not between the latter and plaintiff, and plaintiff could not enforce it.   *Lake Ontario S. R. Co.* v. *Curtis*, 80 N. Y. 219.   There was no description in the agreement of the corporation to which Medhurst was to convey the title, and where the beneficiary is not described in a contract, it is void as to the trust.   *Dillaye* v. *Greenough*, 45 N. Y. 438.   If, however, the appellants can claim no interest in the fifty-five per cent claimed by Erlanger in the said mining ground, there is still the fifteen per cent, at least, owned by Medhurst, to which it should be entitled to a deed.

As stated before, the corporation would be only his trustee, and this trustee he (Medhurst) proposed to form, and then convey his mining ground to it.   An agreement by Medhurst to convey his interest to such a corporation would be void as to existing creditors, for Medhurst received no consideration for any such agreement.   *Young* v. *Heermans*, 66 N. Y. 374.   The agreement on the part of Medhurst to convey this fifteen per cent was voluntary; there was no consideration therefor.   Such a contract was void.   An executory agreement, in order to be enforced, must have a valuable consideration therefor.   Pomeroy on Contracts, p. 80, sec. 57, and note; *Bunn* v. *Winthrop*, 1 Johns. Ch. 337; *Estate of Webb*, 49 Cal. 541–545; Fry on Specific Performance, p. 45, sec. 92.   Even if there had been a conveyance of this property at the time of the attachment, it being a voluntary conveyance, it would be *prima facie* void as to appellants.   *Reade* v. *Livingston*, 3 Johns. Ch. 481; *Seward* v. *Jackson*, 8 Cow. 406; *Hinde's Lessee* v. *Longworth*, 11 Wheat. 213; *Cole* v. *Tyler*, 65 N. Y. 73.   The fact that Medhurst conveyed the property to the plaintiff after the attachment would not prejudice appellants' rights.

W. W. DIXON, for the respondent.

The record shows no motion for a new trial; no statement on appeal. The evidence, not being in a bill of exceptions, cannot be reviewed, nor can any question of fact be examined. *Allport* v. *Kelley,* 2 Mont. 343; *Chumasero* v. *Vial,* 3 Mont. 376. The judgment cannot be reversed for want of any finding by the court below. Code Civ. Proc., sec. 270. And this court will presume, if the contrary does not appear in the record, that the court below found facts sufficient to support the judgment. *Ming* v. *Truett,* 1 Mont. 322; *Alder Gulch M. Co.* v. *Hayes,* 6 Mont. 31, and cases cited above. A judgment on an attachment lien is subject to all equities. Freeman on Judgments, sec. 357. And a purchaser at judicial sales acquires only a defendant's title subject to all equities. Freeman on Executions, sec. 336; Drake on Attachments; *Osterman* v. *Baldwin,* 6 Wall. 116; *Brown* v. *Pierce,* 7 Wall. 205; *Chumasero* v. *Vial,* 3 Mont. 376; *Story* v. *Black,* 5 Mont. 26.

The agreement was not to hold unpatented ground. On the contrary, it provided that the ground should be patented. And under the law then (Mining Act of 1872) a conveyance to an alien of patented mining ground was good, and would pass the title. And if this is true, how could an agreement with an alien to patent ground and then convey it to him be said to be a fraud upon the law? Besides, the agreement of Medhurst was to convey to a corporation, and he did convey it to a domestic corporation formed under the laws of Montana. But it is said Erlanger was to receive stock. What if he was? Stock in a corporation is personal property, and an alien may hold it in the absence of statute forbidding it. It was not forbidden by statute until the act of Congress of 1887, and then only to a limited extent.

But suppose Erlanger, being an alien, could not hold

unpatented mining ground, and that it should be admitted that the agreement was to hold such ground in trust for him. What then? Appellants cite *Tibbitts* v. *Ah Tong,* 4 Mont. 536, and *Chapman* v. *Toy Long,* 4 Saw. 28. The cases are correct in so far as they decide that an alien cannot acquire title to unpatented ground either by location or purchase. But not in so far as they decide that an alien cannot hold real estate until office found by government, or that his title can be questioned in a collateral proceeding. *Recouillat* v. *Sansevain,* 32 Cal. 386; *Ferguson* v. *Neville,* 61 Cal. 356; *Governeur* v. *Robertson,* 11 Wheat. 332; *Peter* v. *Beverly,* 10 Pet. 565; *Taylor* v. *Benham,* 5 How. 270; *Osterman* v. *Baldwin,* 6 Wall. 116. And as to aliens as *cestuis que trust,* see the cases in 10 Peters and 5 Howard, above referred to, and also 1 Perry on Trusts, section 65 (cited by appellants), and *Anstice* v. *Brown,* 6 Paige, 453.

Appellants say that the agreement of Medhurst to hold as trustee for Erlanger, who was an alien, was a fraud upon the United States law, and that therefore Medhurst owned the property. This seems to be a singular and unwarranted conclusion. None of the cases, not even those in 4 Montana and 4 Sawyer, above referred to, hold that a conveyance to an alien leaves the title in his grantor. They only hold that the alien acquires no title and that some one else may, and decide that purchase by an alien left the ground open to location,—not that the title remained in the vendor. That there was no description of the corporation is answered by the finding of the court that plaintiff is the corporation to which Medhurst agreed to convey. Appellants are not entitled to a deed for fifteen per cent of the property. Medhurst held this, as he held the balance of the property, under agreement, made before the levy of the attachment, to convey it to the corporation and receive stock for it.

BACH, J.    This is an action that was brought to quiet title to certain real estate situate in Silver Bow County, Montana Territory.

The appeal is from the judgment alone. The transcript on appeal contains the judgment roll, consisting of the complaint, answer, replication, the findings of the court, and exceptions to those findings; request of certain findings which were refused by the court, and exceptions to such refusal; the decree, notice of appeal, and undertaking on appeal.

The record in this case is incomplete. For instance, the first finding of fact reads as follows: "That, on or about the 29th of May, 1883, an agreement in writing in reference to the property described in the complaint was made and entered into between Francis W. H. Medhurst and Emile Erlanger, a copy of which agreement is attached to the deposition of said Medhurst and said Erlanger in this case."

Those depositions are not in the judgment roll. The agreement referred to in the findings can only be ascertained by a comparison of all of the pleadings and the findings. There was no motion for a new trial made; therefore we are to conclude that all of the findings are supported by the evidence; that there was no evidence to sustain the findings requested and refused; and that where there is no finding on any issue, the court found in favor of the plaintiff upon that issue. Such is the rule laid down by the statutes, and from the authorities.

The facts, as shown by the record, are about as follows: On the twenty-ninth day of May, 1883, one Emile Erlanger entered into an agreement with Francis W. H. Medhurst, whereby it was agreed that Erlanger was to furnish moneys for the purpose of locating and purchasing mining properties, and that Medhurst, on his part, was to use his skill as a miner in locating, purchasing, and developing mining property; that the patent for

such properties as were not already patented was to be taken in the name of Medhurst, and to be held in trust as follows: —

That said Medhurst was to convey fifty-five per cent of the property to some person designated by the said Erlanger, or to some corporation so designated. It is admitted that Erlanger was and is an alien.

Thereafter, on the —— day of December, 1883, this agreement was modified so that, instead of Medhurst applying for the patent, all of the mining property so located and purchased by the said Medhurst was to be conveyed to a corporation thereafter to be named, and that said corporation was to apply for the patents itself where no patents had already been obtained. In said corporation, Erlanger was to control and have the disposition of fifty-five per cent of the stock; fifteen per cent of the stock was to go to the said Medhurst, fifteen per cent of the stock to one Pardee, and the remaining fifteen per cent to one Wartenweiler. The said Erlanger advanced the sum of about fifty thousand dollars, in accordance with the terms of said agreement. There is an issue upon the following points, viz.: —

Whether or not there was a consideration, whether or not the agreement was in writing, and as to whether or not there was fraud in fact. But, as has already been stated, it must be concluded that the court found in favor of the plaintiff upon these issues. The corporation, as to all of its material parts and the interests of its stockholders, had been completely provided for, and all that lacked of making it a legal corporation was the filing provided by the statute. Upon the ninth day of February, the First National Bank of Butte commenced an action against the said Medhurst, and levied an attachment upon the properties described and mentioned in the complaint. The agreement and modification thereof heretofore mentioned were not on record,

but it is alleged in the complaint in this action that the said First National Bank of Butte, when the action against Medhurst was commenced, had actual knowledge of said agreement. That being an issue in the case, if it is material, it must be held to have been found in favor of the plaintiff. The action of the First National Bank of Butte against Medhurst resulted in favor of the plaintiff therein. Execution was issued, and some time thereafter the property described in the complaint was sold at sheriff's sale. Between the date of the attachment and the date of the sheriff's sale, the Princeton Mining Company, which is admittedly the corporation referred to in the agreement and modification thereof between Medhurst and Erlanger, was duly incorporated under the laws of the territory of Montana, and at the sheriff's sale gave actual notice of their claim to the property which the sheriff was then selling. At said sale the judgment creditor in the execution, the First National Bank of Butte, the defendant herein, bought the said property. The sheriff was about to deliver the sheriff's deed to the defendant herein when the plaintiff brought this action to quiet his title and restrain the sheriff from delivering said deed. The first point made by the appellants is, that Erlanger, being an alien, cannot hold title to real estate, or an interest in it as *cestui que trust.* It may be well admitted that an alien cannot locate mining lands of the United States, and it is a question decided in the negative by many courts as to whether or not an alien may be a *cestui que trust* to any real estate, even when the legal title stands in the name of a citizen: but in this last case it would seem to be beyond doubt settled that the *cestui que trust* may maintain his interest as against everybody until office found; but that is not the question involved in this case. The agreement, as modified before the attachment, provided, not that Erlanger should have fifty-

five per cent of the land, but merely an interest in the stock. Counsel for the appellants holds that this places Erlanger's share in the same position as though he were directly the *cestui que trust* to the land.

It is true that, for many purposes, the trustees of a corporation hold the title to real estate, as they do the title of all its property, in trust ultimately for its stockholders, so that, if there should be a dissolution of the corporation, and property remain, the stockholders would share *pro rata* in all of its property; but while the corporation is still in legal existence, the stock of the corporation is personal property, and may be transferred as personal property, and the owners of that stock have no interest in the land which can be taken by any process known to the law, and the mere fact that a foreigner, an alien, owns stock in a corporation which has acquired the title to real estate, does not, under any authority which we have been able to find, disturb the title of that corporation to the real estate. That becomes quite apparent when we remember the law passed by a recent session of Congress, providing that no corporation in which an alien owns over twenty per cent of the stock should be entitled to acquire mining property. If the law had been such as contended for by the appellants here, it would have been unnecessary legislation on the part of Congress to pass such law as is referred to.

What right did the First National Bank of Butte acquire in and to the real estate by filing its attachment upon that property?

The facts in this case show that the judgment creditor, the First National Bank of the city of Butte, is not a purchaser in good faith, for when it commenced the action against Medhurst it had actual notice of the agreement and modification referred to, and of the actual interest of its judgment debtor. Such is the allegation

of the complaint, and it being an issue in this case, as has already been said, must be deemed to have been found in favor of the plaintiff. Therefore the law in regard to the rights of purchasers in good faith, as against unrecorded conveyances, does not apply, for where there is actual notice the purchaser would not be a purchaser in good faith.

And it is also a rule of law that where a judgment creditor attaches real estate of his judgment debtor, and that property is held by the said judgment debtor in trust, the judgment creditor (at least when purchasing with actual notice) obtains no right as against the *cestui que trust* of that property, even though the trust is no part of the records. See *Osterman* v. *Baldwin*, 6 Wall. 116; *Brown* v. *Pierce*, 7 Wall. 205; *Chumasero* v. *Vial*, 3 Mont. 376; *Story* v. *Black*, 5 Mont. 26.

Consequently, at the sheriff's sale, the judgment creditor, the First National Bank of Butte, obtained no right except such as Medhurst himself had, and that right was merely the right of a trustee to convey the lands to the plaintiff in this case; and inasmuch as Medhurst, before the sale, had conveyed the property to the Princeton Mining Company, there was no trust left to be executed.

It is claimed, however, that the defendant is entitled at least to Medhurst's share of the real estate; that is to say, fifteen per cent. Medhurst has no title or share that can be set apart by him in the real estate as long as the corporation is legally discharging the purposes for which it was formed: his sole interest is in the stock.

If a judgment creditor of a stockholder, by attaching his debtor's stock, could insist that he was entitled to a *pro rata* share of all of the assets of that corporation upon demand, the existence of corporations would be placed in a very questionable position. Every such judgment creditor would become a tenant in common of the corporation. The corporation is entitled to the free and

undisturbed use of its property within the law, free from any claim of the creditor of the stockholder. It is entitled, when so authorized to do, to use all of its property as security for moneys borrowed for the purposes of that corporation.

We have looked in vain for an authority sustaining the position of the appellants in this case. We admit the point claimed by them that the stockholders are ultimately to share *pro rata* in all of the properties of the corporation; but that division is not to take effect until the dissolution of the corporation by act of law, or by some order of the court where the law authorizes a dissolution by such an order. Up to that time the right of a stockholder is mere personal property.

It may be that the plaintiff in this case should have protected the interests of the First National Bank of Butte by refusing to issue the stock to Medhurst, and that in neglecting to do that, if it has neglected so to do, it does not properly come into court offering to do equity; but that point has nowhere been raised by the appellants, either in the court below or in this court, and we do not feel compelled to say what might have been the result if that point had been properly before us.

The judgment of the court below is affirmed, with costs.

*Judgment affirmed.*

McConnell, C. J., and Liddell, J., concur.