Mr. Justice CLIFFORD
 

 delivered the opinion of the court.
 

 Representations of the complainant were, that on the tenth of August, 1857, he acquired a complete title to the premises described in the bill of complaint, under the pre-emption laws of the United States, and that thereafter, on the same day, he was compelled, through threats of personal violence and fear of his life, to convey the same, without any consideration, to the principal respondent. Framed on that theory, the bill of complaint alleged that the first-named respondent was at that time a member of an unlawful association in that Territory, called the Omaha Claim Club, and that he, accompanied by three or four other persons belonging to that association, came to his house a few days before he perfected his right of pre-emption to the land in question,
 
 *210
 
 and told the complainant that if he entered the land under his pre-emption claim, he must agree to deed the same to him, and added, that unless he did so, he, the said respondent and his associates, would take his life; and the complainant further alleged, that the same respondent, accompanied, as before, by certain other members of that association, came again to his house on the day he perfected his pre-emption claim, and repeated those threats of personal violence, and did other acts to intimidate him, and induce him to believe that they would carry out their threats if he refused to execute the deed as required.
 

 Based upon those allegations, the charge is that the complainant was put in duress by those threats and acts of intimidation, and that he signed and executed the deed, and conveyed the land by means of those threats and certain a'ts of intimidation, and through fear of his life, and without any consideration; and he prayed the court that the' conveyance might be decreed to be inoperative and void, and that the grantee might be required to reeonvey the same to the complainant.
 

 Two other persons were made respondents, as claiming some interest in the laud in controversy. Pierce, the principal respondent, and Weston, one of the other respondents, were non-residents, and were served by publication pursuant to the rules of the court and the law of the jurisdiction. They never appeared, and failing to plead, answer, or demur, and due proof of publication in the manner prescribed by law having been filed in court, a decree was rendered as to them, that the bill of complaint be taken as confessed.
 
 *
 

 Morton, the other respondent, appeared and filed an answer, in which he alleged that the principal respondent, on the twenty-eighth of August, 1857, and for a long time before, was the owner in fee of the premises; that he was informed, and believed, that the complainant entered upon the land as the tenant of the principal respondent, and that lie was prosecuting this suit in violation of the just rights
 
 *211
 
 of all the respondents; that the principal respondent wanting to borrow money, he, the respondent before the court, loaned him a large sum, and accepted bills of exchange for the payment of the same, drawn to the order of the borrower of the money, and which were indorsed by the drawer; that the bills of exchange not having been paid when they be-ca,me due, he brought suit against the drawer and indorser, and recovered judgment against him for three thousand one hundred dollars; that the judgment so recovered is in full force and unsatisfied, and that the same is a lien on the premises described in the bill of complaint.
 

 No answer, from any knowledge possessed by the respondent, is made to the allegation that the complainant acquired a complete title to the land under the pre-emption laws of the United States, nor to the charge contained in the bill of complaint, that the deed was procured by threats of personal violence amounting to actual duress. On the contrary, the answer alleged that the respondent before the court was-an utter stranger to all those matters and things, and that he could not answer concerning the same, because he had no information or belief upon the subject.
 

 Authorities aré not wanting to the effect, that all matters well alleged in the bill of complaint, which the answer neither denies nor avoids, are admitted; but the better opinion is the other way, as the sixty-first rule adopted by this court provides that if no exception thereto shall be filed within the period therein prescribed, the answer shall be deemed and taken to be sufficient.
 
 *
 

 Material allegations in the bill of complaint ought to be answered and admitted, or denied, if the facts are within the knowledge of the respondent; and if not, he ought to state what his belief is upon the subject, if he has any, and if he has none, and cannot form any, he ought to say so, and call on the complainant for proof of the alleged facts, or waive that branch of the controversy; but the clear weight of authority is, that a mere statement by the re
 
 *212
 
 spondeut in his answer, as in this ease, that he has no knowledge that the fact is as stated, without any answer as to his belief concerning it, is not such an admission as is to be received as full evidence of the fact.
 
 *
 

 Such an answer does not make it necessary for the complainant to introduce more than one witness to overcome the defence, and the well-known omissions and defects of such an answer may have some tendency to prove the allegations of the bill of complaint, but they are not such an admission of the same as will constitute a sufficient foundation for a decree upon the merits.
 
 †
 

 Proper remedy for a complainant, in such a case, is to except to the answer for insufficiency within the period prescribed by the sixty-first rule; but if he does not avail himself of that right, the answer is deemed sufficient to prevent the bill from being taken
 
 pro confesso,
 
 as it may be if no answer is filed.
 
 ‡
 

 Attention is called to the fact, that no replication was filed to the answer; but the suggestion comes too late, as the respondent proceeded to final hearing in the court below without interposing any such objection.
 

 Mere formal defects in the proceedings, not objected to in the court of original jurisdiction, cannot-be assigned in an appellate tribunal as error to reverse either a judgment at law or decree in equity.
 

 Legal effect of a replication is, that it puts in issue all the matters well alleged in the answer, and the rule is, that if none be filed, the answer will' be taken as true, and no evidence'can be given by the complainant to contradict anything which is therein well alleged.
 
 §
 

 Undenied as the answer is by any replication, it must
 
 *213
 
 have its fair scope as an admission; btit the court is not authorized to supply anything not expressed in it, beyond what is reasonably .implied from the language employed. Proofs were taken by the complainant, and they show, to the entire satisfaction of the court, that all the matters alleged in the bill of complaint, and not denied in the answer, are true, and the conclusion of the court below was, that the complainant acquired a complete title to the land under his pre-emption claim, and that the deed from him to the principal respondent was procured in the manner and by the means alleged in the bill of complaint.
 

 Nothing is exhibited in the record to support any different conclusion, or to warrant any different decree, unless it be found in one or the other of the first two defences set up in the answer.
 

 First defence is, that the principal respondent, on the twenty-eighth of August, 1857, and long before that, time, was the owner in fee of the premises; but neither that part of the answer, nor any other, denied that the complainant acquired a complete title to the land, as alleged in the bill of complaint, nor set up any defence in avoidance of those allegations, nor made any attempt to present any defence against the direct charge, that the deed under which the respondent claimed title^ was procured from the complainant through threats of personal violence and by means of duress. Indefinite as the allegation of title is, the answer must be construed as referring to the title under the deed in controversy, as it is. not pretended that the respondent ever had any other, and, if viewed in that light, it is in no respect inconsistent with the conclusion adopted by the Supreme Court of the Territory.
 

 Such an indefinite allegation cannot be considered as presenting any sufficient answer, either to the alleged title of the complainant or to the charge made in the bill of complaint.
 

 Briefly stated, the second defence set up in the answer is, that the respondent was informed and believed that the com
 
 *214
 
 plainant entered upon the land as a tenant, but the time when the supposed entry was made is not alleged, nor are the circumstances attending the entry set forth, nor is any reason assigned wThy the allegations were not made more definite, nor is there any fact or circumstance alleged which shows or tends to show that there was any prior owner to the land, except the United States, nor that the respondent ever pretended to have any other title to the same than that derived from the complainant.
 

 Viewed in any light, those allegations must be regarded as evasive and insufficient; and they are not helped by the omission of the complainant to file the general replication. Those pa$ts of the answer being laid out of the case as insufficient to constitute a defence, the conclusion is inevitable that the title to the land was in the complainant.as alleged, and that he parted with it through threats of personal violence and by duress, and without any consideration.
 

 Argument to show that a deed or other written obligation or contract, procured by means of duress, is inoperative and void, is hardly required, as the proposition is not denied by the respondent. Actual violence is not necessary to constitute duress, • even at common law, as understood in the parent country, because consent is the very essence of a contract, and, if there be compulsion, there is no actual consent, and moral compulsion, such as that produced by threats to take life or to inflict great bodily harm, as well as that produced by imprisonment, is everywhere regarded as sufficient, in law, to destroy free agency, without which there can be no contract, because, in that state of the case, there is no consent.
 

 Duress, in its more extended sense, means that degree of constraint or danger, either actually inflicted or threatened and impending, which is sufficient, in severity or in apprehension, to overcome the mind and will of a person of ordinary firmness.
 
 *
 

 
 *215
 
 Text-writers usually divide the subject into two classes, namely, duress
 
 per minas
 
 and duress of imprisonment, and that classification was uniformly adopted in the early history of the common law, and is generally preserved in the decisions of the English courts to the present time.
 
 *
 

 Where there is an arrest for an improper purpose, without just cause, or where there is an arrest for a just cause, but without lawful authority, or for a just cause, but for an unlawful purpose, even though under proper process, it may be construed as duress of imprisonment; and if the person arrested execute a contract or pay money for his release, he may avoid the contract as one procured by duress, or 'may recover back the money in an action for money had and received.
 
 †
 

 Second class, duress
 
 per minas,
 
 as defined at common law, is where the party enters into a contract (1) Eor fear of loss of life; (2) Eor fear of loss of limb; (3) For fear of mayhem; (4) For fear of imprisonment; and many modern decisions of the courts of that country still restrict the operations of the rule within those limits.
 
 ‡
 

 They deny that contracts procured by menace of a mere battery to the person, or of trespass to lands, or loss of goods, can be avoided on that account, and the reason assigned for this qualification of the rule is, that such threats are held not to be of a nature to overcome the mind and will of a firm and prudent man, because it is said that if such an injury is inflicted, sufficient and adequate redress may be obtained in a suit at law.
 

 Cases to the same effect may be found also in the reports of decisions in this country, and some of our text-writers have adopted the rule, that it is only where the threats uttered excite fear of death, or of great bodily harm, or unlawful imprisonment, that a contract, so procured, can be avoided, because, as such courts and authors say, the person
 
 *216
 
 threatened with slight injury to. the. person, or with loss of property, ought to have sufficient resolution to resist such a threat, and to rely upon the law for his remedy.
 
 *
 

 On the other hand, there are many American decisions, of high authority, which adopt a more liberal rule, and hold that contracts procured by threats of battery to the person, or the destruction of -property, may be avoided on the ground of duress, because in such a ease there is nothing but the form of a contract, without the substance.
 
 †
 

 But the case under consideration presents no question for decision which requires the court to determine which class of those cases is correct, as they all agree in the rule that a contract procured through fear of loss of life, produced by the threats of the other party to the contract, wants the essential element of consent, and that it may be avoided for duress, which is sufficient to dispose of the present controversy.
 
 ‡
 

 Next question which arises in the case is, whether the judgment set up by the appellant creates a superior equity in his favor over that alleged and proved by the appellee.
 

 Before proceeding to examine this question, it will be useful to advert briefly to the material facts exhibited in the record.
 

 Title was acquired by the complainant under the preemption laws of the United States, and on the same day the principal respondent, through threats to take his life, if he refused, compelled him to convey the same to that respondent, and the record shows that the respondent before the
 
 *217
 
 court, within the same month, loaned the money to the grantee in that deed, for which he recovered judgment, although the grantor was then.in possession of the land, and has remained in possession of the same to the present time.
 

 The judgment is founded upon the bills of exchange received for that loan. Judgments were not liens at common law, but several of the States had passed laws to that effect before the judicial system of the United States was organized, and the decisions of this court have established the doctrine that Congress, in adopting the processes of the States, also adopted the modes of process prevailing at that date in the courts-of the several States, in respect to the lien of judgments within the limits of their respective jurisdictions.
 
 *
 

 Different regulations, however, prevailed in different States, and in some neither a judgment nor a decree for the payment of money, except in cases of attachment or mesne process, created any preference in favor of the creditor until the execution was issued, and had been levied on the land. Where the lien is recognized, it confers a right to levy on the land to the exclusion of other adverse interests acquired' subsequently to the judgment; but the lien constitutes no property or right in the land its elf.
 
 †
 

 Such judgments and decrees were made liens by the process acts in the.Federal districts where they have that, effect under the State laws, and Congress has since provided that they shall cease to have that operation in the same manner, and at the same periods, in the respective Federal districts, as like processes do when issued from the State courts. Federal judgments and decrees are liens, therefore, in all cases, and to the same extent, as similar judgments and decrees are, when rendered in the courts of the State.
 

 Express decision of this court is, that the lien of a judg
 
 *218
 
 ment constitutes no property in the laud, that it is merely a general lien securing a preference over subsequently-acr quired interests in the property, but the settled rule in chancery is, that a general lien is controlled in such courts so as to protect the rights of those who were previously entitled to an equitable interest in the lands, or in the proceeds thereof.
 

 Specific liens stand upon a different footing, but it is well settled that a judgment creates only a general lien, and that the judgment creditor acquires thereby no higher or better right to the property or assets of the debtor, than the debtor himself had when the judgment was rendered, unless he can show some fraud or collusion to impair his rights.
 
 *
 

 Correct statement of the rule is, that the lien of a judgment creates a preference over subsequently acauired rights, but in equity it does not attach to the mere legal title to the iand, as existing in the defendant at its rendition, to the exclusion of a prior equitable title in a third person.
 
 †
 

 Guided by these considerations, the Coui't of Chancery will protect the equitable i’ights of third persons against the legal lien, aud will limit that lien to the actual interest which the judgment debtor had in the estate at the time the judgment was rendered.
 
 ‡
 

 Objection is also made, that the affidavit showing that the defendants were non-residents, was not in due form, and that the order of notice, and the publication of the same, were insufficient to give the court jurisdiction; but the proposition is not supported by the record, and must be overruled.
 

 Decree affirmed.
 

 *
 

 Nations et al.
 
 v.
 
 Johnson et al., 24 Howard, 201.
 

 *
 

 Young
 
 v.
 
 Grundy, 6 Cranch, 51; Brooks
 
 v.
 
 Byam, 1 Story, 297.
 

 *
 

 Warfield
 
 v.
 
 Gambrill, 1 Gill
 
 &
 
 Johnson, 503.
 

 †
 

 Young
 
 v.
 
 Grundy, 6 Cranch, 51; Parkman
 
 v.
 
 Welch, 19 Pickering, 234.
 

 ‡
 

 Hardeman v. Harris, 7 Howard, 726; Stockton
 
 v.
 
 Ford, 11 Howard, 232; 1 Daniels’s Chancery Practice, 736; Langdon
 
 v.
 
 Goddard, 3 Story, 13.
 

 §
 

 1 Barbour’s Chancery Practice, 249; Mills
 
 v.
 
 Pitman, 1 Paige’s Chancery, 490; Peirce
 
 v.
 
 West, 1 Peters’s Circuit Court, 351; Story’s Equity Pleading, 878; Cooper’s do., 329.
 

 *
 

 Chitty on Contracts, 217; 2 Greenleaf on Evidence, 283.
 

 *
 

 2 Institutes, 482; 2 Rolle’s Abridgment, 124.
 

 †
 

 Richardson
 
 v.
 
 Duncan, 3 New Hampshire, 508; Watkins
 
 v.
 
 Baird, 6 Massachusetts, 511; Strong
 
 v.
 
 Grannis, 26 Barbour, 124.
 

 ‡
 

 3 Bacon’s Abridgment, title "Duress,” 252.
 

 *
 

 Skeate v. Beale, 11 Adolphus & Ellis, 983; Atlee v. Backhouse, 3 Meeson & Welsby, 642; Smith v. Monteith, 13 Id. 438; Shepherd’s Touchstone, 6; 1 Parsons on Contracts, 393
 

 †
 

 Foshay v. Ferguson, 5 Hill, 158; Central Bank v. Copeland, 18 Maryland, 317; Eadie v. Slimmon, 26 New York, 12; 1 Story’s Equity Jurisprudence (9th ed.), 239; Harmony v. Bingham, 12 New York, 99; S. C., 1 Duer, 229; Fleetwood v. New York, 2 Sandford, 475; Tutt v. Ide, 3 Blatchford, 250; Astley v. Reynolds, 2 Strange, 915; Brown v. Peck, 2 Wisconsin, 277; Oates v. Hudson, 5 English Law and Equity, 469.
 

 ‡
 

 2 Greenleaf on Evidence, 283; 1 Blackstone’s Commentaries, 131.
 

 *
 

 Williams
 
 v.
 
 Benedict et al., 8 Howard, 111; Ward et al.
 
 v.
 
 Chamberlain et al., 2 Black, 438; Bayard
 
 v.
 
 Lombard, 9 Howard, 530; Riggs
 
 v.
 
 Johnson County, 6 Wallace, 166.
 

 †
 

 Conard
 
 v.
 
 Atlantic Ins. Co., 1 Peters, 443; Massingill
 
 v.
 
 Downs, 7 Howard, 767. ”
 

 *
 

 Drake on Attachments, § 223.
 

 †
 

 Howe, petitioner, 1 Paige’s Chancery, 128; Ells
 
 v.
 
 Tousley, Ib. 283; White
 
 v.
 
 Carpenter, 2 Paige, 219; Buchan
 
 v
 
 Sumner, 2 Barbour’s Chancery, 181; Lounsbury
 
 v.
 
 Purdy, 11 Barbour, 494; Keirsted
 
 v.
 
 Avery, 4 Paige’s Chancery, 15.
 

 ‡
 

 Averill
 
 v.
 
 Loucks, 6 Barbour, 27.