## E. L. TARBOX *vs.* P. R. TONDER & wife.

## April Term, 1873.

ATTACHMENT UNDER CODE, § 3455, DENIAL OF GROUND.—An attachment by bill, which simply seeks to subject certain realty of the debtor, upon the ground that the defendant is about to convey away his property fraudulently, is an attachment under the Code, section 3455, subs. 6, where the jurisdiction of the court depends upon the attachment, and a denial of the ground alleged can, perhaps, only be made by plea in abatement.

SAME, UNDER CODE, § 4289, HOW DENIED.—But a bill filed to set aside a conveyance made, at the instance of the debtor, by a third person to the debtor's wife, on the ground that it was fraudulent in law because voluntary, or fraudulent in fact, is a proceeding under the Code, § 4288, and an attachment of the property under § 4289, is not essential to the jurisdiction, and a denial of its ground may be made by answer, and a plea in abatement is unnecessary.

HUSBAND AND WIFE—HUSBAND'S POSSESSION OF MONEY DERIVED FROM SALE OF WIFE'S LAND.—The temporary possession by the husband of money derived from the sale of his wife's lands, if the money were actually invested in other land and the title taken to the wife, would not be sufficient to induce the court to divest that title at the instance of the creditors of the husband.

*R, McP. Smith*, for complainant.

*M. B. Howell*, for defendants.

THE CHANCELLOR :—The original bill, filed on the 8th of August, 1871, sought to attach the interest of P. R. Tonder in a lot sold by the defendant Ewing to the defendant Smith, and by Smith to Tonder, to satisfy the debt of complainant against Tonder due by note, the ground of the attachment being that Tonder was " about to convey away his property fraudulently." On the 14th of September, 1871, the complainant files what he calls an amended bill against the same parties and Henrietta B. Tonder, the wife of P. R. Tonder, alleging that, since the filing of the original bill, complainant has ascertained that the defendant P. R. Tonder has caused the defendant Ewing to convey the said lot, on the 28th of June, 1871, to defendant Henrietta for her sole and separate use, in consideration of $1,007 paid by the said P. R. Tonder, which deed of conveyance had been duly proved and registered. The deed is specially referred to by the bill, but not filed as evidence. This bill alleges that there was no consideration for said conveyance moving from said wife or any one on her behalf, but said deed was wholly voluntary, and stands on the footing of a mere voluntary conveyance made by a man largely indebted at the time, the debt of complainant then existing among others. " In fact," the bill adds, " the special motive for having the deed thus made was to hinder, delay and defeat complainant in the recovery" of his debt. The bill prayed and obtained an attachment of the lot, and "for a decree setting aside said conveyance as fraudulent and void, and subjecting said real estate to the satisfaction of complainant's debt."

The defendants Tonder and wife file a joint answer in which the liability of the husband for the complainant's debt, as endorser of the notes sued on, is substantially ad-

mitted. They admit that the husband bought the property attached, but deny that the deed made to the defendant Henrietta was wholly voluntary by stating that a part of the consideration, "about one-third or perhaps more of the purchase money," was paid by the wife, she having sold her land in Texas for the purpose, They expressly deny "that said deed was made with a motive to defraud, hinder, or delay said complainant in the collection of his debt." "They caused the deed to be made to respondent Henrietta because she had put her money into it, because they intended to occupy it as a homestead," &c. They claim the property as a homestead under the act of the 12th of March, 1868, ch. 85. The answer does not notice the allegation of the bill that the deed recites that the consideration was paid by the husband.

The only evidence introduced by the complainant consists of the deposition of one R. A. Carter, who proves nothing except that Tonder spoke of the property attached as worth about $2,500, and his own deposition, which, in effect, only establishes his debt, and that in some conversation with P. R. Tonder the latter spoke of his lands in Texas, from which he seemed to expect the means to pay the debt to complainant. The defendants' evidence consists of the deposition of H. L. Atkinson, who proves that Mrs. Tonder was the widow of one Russell and came from Texas, that she owned a tract of land in Texas and employed one Addy to sell it for her, who sent to her through the witness, $750 as part of the proceeds of the sale of said land, and that "the money was used on the house and lot where they now live." He appends to his deposition several letters from Addy on the subject, which tend to show that the land in Texas did belong to Mrs. Tonder, and was sold as hers.

The original bill was a simple attachment bill under the Code, section 3455, subs. 6, where the jurisdiction depended on the attachment writ, and under it the denial of the ground of attachment ought, perhaps, to have been by plea in abatement, not by answer. *Isaacs* v. *Edwards*, 7 Hum. 465;

*Foster* v. *Hall*, 4 Hum. 346; *Kendrick* v. *Davis*, 3 Cold, 524; Heisk. Dig., p. 196.

The so called amended bill is, in fact, a new bill under a different provision of the Code, and by filing it, and praying and obtaining a new attachment, the complainant abandoned his first bill, and the attachment sued out thereunder. It is not always easy to decide when an attachment bill to reach property fraudulently conveyed is filed under § 3455 of the Code, and when under § 4288. If the bill simply seek to subject the property attached to sale by *venditioni exponas* as if the attachment had been sued out at law, then it is filed under § 3455. But if, as in this case, it asks that the fraudulent conveyance be set aside, then it goes beyond the ordinary attachment suit, by which the jurisdiction is concurrent at law and in equity, and appeals to the exclusive jurisdiction of the court of chancery. In the one case, the attachment is essential to jurisdiction, in the other only a mode of making the decree effectual. The distinction is important, for, in ordinary attachment cases, the weight of authority seems to be that the defendant must, if he wishes to take issue upon the ground of attachment, do it by plea in abatement, and waives the defense by answering, although he deny the truth of the allegation in his answer. The jurisdiction of the chancery court under § 4288 is now, upon a bill filed by a creditor before judgment, precisely the same as it was formerly upon a similar bill by a judgment creditor. Upon such a bill it was not necessary for the defendant to deny the fraud by plea, nor is it necessary now upon a bill filed under § 4288. *Green* v. *Starnes*, 1 Heisk. 582. It is probable, even, that the defense could not be made by a plea at all, because by § 4292 the complainant is entitled to his judgment if he fails to show fraud, and the plea, therefore, would not go to the whole bill.

No point is made by the learned counsel for the complainant on this subject, the distinction having doubtless occurred to him, but it seemed to me advisable to direct the attention of the bar to the danger of overlooking the fact that defense,

in ordinary attachments, should be by plea, and not by answer, where it is rested upon a denial of the ground of attachment.

The amended bill, it will be noticed, goes upon two grounds :

1. That the deed to Mrs. Tonder was made specially to hinder and delay the complainant in the collection of his debt.

2. That the deed was voluntary, by a man largely indebted at the time, to the complainant among others, and is therefore fraudulent and void.

The first of these grounds is expressly denied by the answer, and the complainant has introduced no proof to sustain it. Fraud, it need scarcely be said, is never presumed, and must be proved. It is true, it does not require positive and direct proof to establish it. It may be implied from circumstances. In fact, circumstances may be more conclusive and satisfactory than positive expressions of opinion. But here, there is no proof. It is not even proved that the defendant Tonder was in debt at all except to the complainant, and, although it is alleged in the original bill that "said property —the lot in question—is all that he has to the best of complainant's knowledge," yet it is also alleged that "he, the complainant, believes that said Tonder is able to pay all his debts." These allegations are not noticed in the answer and are, therefore, not in issue. *Woods* v. *Carver*, 4 Hay. 90 ; *Brown* v. *Pierce*, 7 Wall. 211. And if they were, there is no proof to sustain them. The first ground, therefore, fails, and it is proper to add, is not relied on by the learned counsel of the complainant in his brief.

The real contest is over the question whether the deed was voluntary. And here the reliance of the complainant is not upon the strength of his evidence, of which he has none, but on the weakness of that of the other side. The testimony, it must be admitted, is not as satisfactory as it might easily have been made, but, in the absence of any proof to the contrary, it is sufficient. It consists of the deposition of

Atkinson, and the accompanying letters of Addy. The witness testified that Mrs. Tonder was a widow at the time of her marriage with Tonder, and came from Texas, that she owned land in Texas, and, at his suggestion, employed Addy to sell it for her, who did sell it, and of the proceeds of sale sent $750 to her through the witness. He adds that the money was used on the house and lot in question. The defendants in their answer say that "about one-third or more" of the purchase-money of the lot was thus paid. The letters of Addy, which are proved to be genuine by Atkinson, show that he was acting for Mrs. Tonder, and did send her $750 as stated by Atkinson. To the extent of the purchase-money of the lot thus paid, or of the improvements made by the funds thus received, it is clear the conveyance was not voluntary, but founded on a valuable consideration. For, although it be true, as contended for by the learned counsel of complainant, that if land of the wife be sold, without any agreement as to the disposition of the proceeds, the marital right attaches, yet that only means that if he reduces such proceeds to possession in her lifetime they become his, and that if he survive his wife he has a right to take them *jure mariti*. In this case, the proof does not show any such reduction to possession. It does not even show that the money came to his hands at all. But if it had, the application of it to the payment of the purchase-money of the lot, and the improvement of the lot, and the causing the title to be made to the wife, would show that the mere temporary possession of the money by him was as agent of the wife, not for himself, and therefore was not sufficient to vest him with the absolute interest. Besides, the making of the conveyance to the wife would be the best possible evidence of an agreement that the money should be held and invested for her. To the extent of the wife's money thus used, I am clearly of opinion that her title is superior to that of any person claiming through the husband.

The right of Tonder and wife to a homestead, exempt from execution or attachment, to the value of one thousand dol-

lars under the act of March 12th, 1868, ch. 85, is not seriously questioned by the complainant. They aver in their answer that the property in dispute was bought and used as such homestead, and the fact of such occupation is admitted. A decree will be drawn up declaring the defendants' right to such homestead to the extent of the sum mentioned in the statute, and also giving to Mrs. Tonder an interest in the property to the extent of the money arising from the proceeds of her Texas land, which were used either in paying the purchase-money for said lot, or in improving the same. If the complainant chooses to take the risk of a reference to ascertain the amount thus used, he can have it, and until the coming in of the report, other matters will be reserved. Otherwise, the bill will be dismissed, each party being charged with one-half the costs.