## DARTMOUTH SAV. BANK v. BATES et al.

*(Circuit Court, D. Kansas. December 19, 1890.)*

LIEN OF JUDGMENT—RECORDING—TERRITORIAL JURISDICTION.
  . Prior to 1888 the lien of judgments in the federal courts was co-extensive with their territorial jurisdiction. Act Cong. Aug. 1, 1888, (25 U. S. St. 357,) provides that the judgments of the federal courts within any state shall be liens on property throughout such state in the same manner as the judgments of courts of general jurisdiction of the state: provided, that if the state laws require judgments of the state courts to be recorded in other counties before they become liens on lands situate therein, this act shall only be applicable in case provision is made for recording of federal court judgments also. Gen. St. Kan. 1868, c. 80, § 419, provides that judgments of state and federal courts shall be liens on the debtor's lands in the county where rendered, and that "any judgment" may be recorded in other counties, and become a lien from that time on the land of the debtor in such county. *Held* that, under these two acts, a judgment in a federal court in Kansas was a lien only on the land of the debtor in the county in which the court was held, but that the lien might be extended by recording the judgment under the state law.

In Equity. Bill for injunction.
*Frederick D. Fuller*, for plaintiff.
*C. M. Welch*, for defendants.
Before CALDWELL and FOSTER, JJ.

CALDWELL, J. . At the threshold of this case we are met with the question whether a judgment rendered in the circuit court of the United States for the district of Kansas is a lien on the lands of the judgment debtor outside of the county in which the court was held and the judgment rendered. The judgment that gave rise to this suit was rendered in the circuit court of the United States at Topeka, in Shawnee county, and the lands of the judgment .debtor upon which it is claimed the judgment was a lien are situated in Wabaunsee county. Land was not liable to be sold on execution at common law, and, as a consequence of this, at common law a judgment created no lien on the land ·of the judgment debtor. The lien was created in England by the statute of Westminster 2, (13 Edw. I.) c. 18. This statute gave the elegit or writ of execution, which subjected real estate to the payment of debts. This statute did not, in terms, declare that a judgment should be a lien on the lands of the debtor, but the courts held that the effect of a statute ·subjecting lands to sale on execution was to make the judgment a lien on the lands of the debtor; and in this country state statutes subjecting land to sale on execution received the same construction, and were held to make judgments liens on the lands of the debtor within the territorial jurisdiction of the court rendering the judgment. *Massingill* v. *Downs*, 7 How. 766, and cases cited. The laws of the several states on the subject of judgment liens are not now, and never have been, uniform. By the laws of some states a judgment is not a lien on lands; in others it is a lien co-extensive with the territorial jurisdiction of the court. In some the lien takes effect from one date, and in others from another, and the duration of the lien is different in different states. No act of congress was ever passed declaring, in terms, that judgments

in the federal courts should be liens, independently of the state law, on the judgment debtor's lands. It is within the constitutional power of congress to make judgments in the federal courts liens on the debtor's property, and to fix the territorial extent and duration of such liens, independently of state laws. But in this, as in all other matters relating to the practice and proceedings for obtaining and enforcing judgments in the federal courts, it has always been the policy of congress to conform the processes in the federal courts to those in the state courts. In *Ward* v. *Chamberlain*, (2 Black, 430, 442, 443,) the supreme court said:

"Under the earlier process acts this court twice decided that the laws of the states furnished the rule of decision in respect to the lien of judgments and decrees rendered in the federal courts upon the land of the debtor; and since the passage of the act under consideration it has been twice affirmed by this court as a matter of history that the act was passed to confirm the view expressed in those decisions. *Beers* v. *Haughton,* 9 Pet. 361; *Ross* v. *Duval,* 13 Pet. 64. Perfect coincidence of opinion upon the subject appears to have prevailed throughout between congress and the court, and on all sides apparently the endeavor has been to assimilate the proceedings in the federal courts for the levying of executions issued on judgments and decrees for the payment of money to those prevailing in the courts of the states."

In the same case the court said:

"The course of legislation shows that it has always been the intention of congress to prevent a creditor suing in the federal courts from obtaining an advantage over another creditor suing in the state courts." 2 Black, 441.

And it was early decided "that congress, in adopting the processes of the states, also adopted the modes of process prevailing at that date in the courts of the several states in respect to the lien of judgments within the limits of their respective jurisdictions." *Brown* v. *Pierce,* 7 Wall. 217, and cases cited.

A question having arisen as to whether the adoption of the processes of the several states adopted the state laws on the subject of the duration of judgment liens, congress, on the 4th of July, 1840, passed an act on that subject, which is now section 967 of the Revised Statutes of the United States, and reads as follows:

"Sec. 967. Judgments and decrees rendered in a circuit or district court within any state shall cease to be liens on real estate or chattels real in the same manner and at like periods as judgments and decrees of the courts of such state cease by law to be liens thereon."

Upon the passage of this act, the rule in the state and federal courts as to the creation and duration of a judgment lien was the same,—that is, the state laws regulated the creation and duration of the lien of judgments in both courts, but the rule was not the same as to the territorial extent of such lien, and for this reason: In those states in which judgments were liens on the lands of the debtor, the lien was restricted to the territorial jurisdiction of the court rendering the judgment, usually a county. But the statutes of those states usually provided a mode of extending the lien of a judgment of a state court to any county in the state by filing a transcript of the judgment in the county clerk's office;

but those statutes, as a rule, did not make a like provision for filing and entering transcripts of federal judgments. If, therefore, in those states the lien of a judgment in a federal court was restricted to the county in which the court was held and the judgment rendered, the suitor in the state court would have an advantage over the suitor in the federal court in the matter of the judgment lien, because, while the suitor in the state court could extend the lien of his judgment to any other county in the state by filing a transcript of it in the clerk's office, the suitor in the federal court had no such right. In this condition of things the courts held that the lien of judgments in the federal courts was, by analogy to the state laws, eo-extensive with the territorial jurisdiction of such courts. *Den* v. *Jones*, 2 McLean, 78; *Massingill* v. *Downs*, 7 How. 760; *Brown* v. *Pierce*, 7 Wall. 217; *Williams* v. *Benedict*, 8 How. 107; *Barth* v. *Makeever*, 4 Biss. 210; *Trapnall* v. *Richardson*, 13 Ark. 543; *Byers* v. *Fowler*, 12 Ark. 218.

In *Massingill* v. *Downs, supra,* the court said:

"In those states where the judgment or the execution of a state court creates a lien only within the county in which the judgment is entered it has not been doubted that a similar proceeding in the circuit court of the United States would create a lien to the extent of its jurisdiction. This has been the practical construction of the power of the courts of the United States, whether the lien was held to be created by the issuing of process or by the express statute. Any other construction would materially affect, and in some degree subvert, the judicial power of the Union. It would place suitors in the state courts in a much better condition than in the federal courts."

The last sentence in this extract has reference to the fact (as is shown elsewhere in the opinion) that the state law made provision for extending the lien of judgments of the state courts by filing an abstract of the same in the clerk's office of any other county, but made no such provision with reference to judgments of United States courts; and suitors, therefore, in the state courts would be "in a much better condition than in the federal courts," if the lien of judgments in those courts was restricted to the county in which they were rendered. Before the case last cited was decided, the difficulty in the way of putting the liens of judgments in the two jurisdictions on an equal footing as to the territorial extent of the lien had been pointed out by Mr. Justice McLEAN, sitting in the circuit. He said:

"The law of the state, which extends the lien of a judgment of a circuit court of the state to any county within which the record of such judgment shall be recorded, can have no application to this court. We have no right under it to require our judgments to be recorded by any clerk of the state court. * * * If it shall be deemed important to have the records of the judgments of this court recorded in the county where the lands of the defendant are situated, it may be required by act of congress, or by a rule of this court, if the law of the state shall require the clerks to make such record." *Den* v. *Jones*, 2 McLean, 83, 85.

It is quite obvious that if congress or the federal courts had possessed the power to require the clerks of the state courts to enter on the records of those courts the judgments of the federal courts as was provided in

the case of judgments of the state courts, that the rule that the lien of a judgment of a federal court was co-extensive with the territorial jurisdiction of the court would never have been adopted. The process acts did not cover the case, and could not be made to do so. If the courts held the lien was restricted to the county in which the judgment was rendered, this would give a preference to suitors in the state courts, because they could extend the lien of their judgments beyond the county in which they were rendered by filing transcripts in the clerk's office of other counties; but suitors in the federal courts were denied that privilege. The rule, therefore, was adopted of making the lien co-extensive with the jurisdiction of the courts. This rule resulted in giving suitors in the federal courts a preference over those in the state courts as to the territorial extent of the lien, and worked a hardship on the citizens generally. The mass of the people relied confidently on the records in the clerk's office of their county disclosing all judgments that were liens on property in the county. Most people were ignorant of the all-pervading lien of a judgment in a federal court, and they bought and sold lands on the faith of what the county records disclosed. The result was that cases of great hardship occurred. Persons who bought and paid for lands on the faith that the records in the county clerk's office showed the condition of the land with reference to judgment liens thereon, afterwards lost their lands by reason of the liens of judgments in federal courts held in some other county, and often at a distance of hundreds of miles from the county in which the lands lay. To correct these hardships, and to put the suitors in the state and federal courts on an equal footing in respect of the territorial extent of the liens of judgments in the two jurisdictions, in so far as congress could do it, the act of August 1, 1888, (25 U. S. St. 357,) was passed. That act provides—

"That judgments and decrees rendered in a circuit or district court of the United States within any state shall be liens on property throughout such state in the same manner and to the same extent, and under the same conditions only, as if such judgments and decrees had been rendered by a court of general jurisdiction of such state: provided, that whenever the laws of any state require a judgment or decree of a state court to be registered, recorded, docketed, indexed, or any other thing to be done, in a particular manner, or in a certain office or county or parish in the state of Louisiana, before a lien shall attach, this act shall be applicable therein whenever, and only whenever, the laws of such state shall authorize the judgments and decrees of the United States courts to be registered, recorded, docketed, indexed, or otherwise conformed to the rules and requirements relating to the judgments and decrees of the courts of the state.  *  *  *  Sec. 3. Nothing herein shall be construed to require the docketing of a judgment or decree of a United States court, or the filing of a transcript thereof, in any state office within the same county or parish in the state of Louisiana in which the judgment or decree is rendered, in order that such judgment or decree may be a lien on any property within such county."

The first clause of the act places judgment liens in a federal court on the same footing in all respects as a judgment lien in a state court of general jurisdiction. But the power of congress was not adequate to the task of extending the territorial operation of a judgment lien in the mode

provided by state laws for a judgment in the state court. Congress was confronted with the difficulty pointed out by Mr. Justice McLEAN,—the law of a state might provide for filing and docketing a transcript of a judgment of a state court in the clerk's office of any county in the state, and in this way extend the lien of a judgment beyond the county in which it was rendered. But there was no federal clerk's office, or other like office, in each county in the state in which a judgment rendered in a federal court could be docketed; and congress could not make it obligatory on the state clerks to docket and enter a judgment of a fed-. eral court on their records. But it was entirely competent for the state to require her clerks to perform this service, and the proviso in section 1 of the act declares, in legal effect, that when the laws of a state provide for docketing in her clerks' offices, or other offices, the judgments of federal courts, in the same manner that judgments in her own courts may be docketed, then, and not before, the territorial extent (in other respects they were already the same) of the lien of a judgment in a federal court in that state shall be the same as that of a judgment in the state court. Where the laws of a state provide for docketing the judgments of its own courts in any county in the state, but do not make a like provision as to the judgments of the federal court, the act of congress is not operative; and in such states the lien of a judgment of a federal court continues to be co-extensive with its territorial jurisdiction. The law of this state conforms exactly to the requirements of the act of congress, and makes it operative in this state. The statute reads as follows:

"Judgments of courts of record of this state, and of courts of the United States rendered within this state, shall be liens on the real estate of the debtor within the county in which the judgment is rendered from the first day of the term at which the judgment is rendered; but judgments by confession, and judgments rendered at the same term during which the action was commenced, shall bind such lands only from the day on which such judgment was rendered. An attested copy of the journal entry of any judgment, together with a statement of the costs taxed against the debtor in the case, may be filed in the office of the clerk of the district court of any county, and such judgment shall be a lien on the real estate of the debtor within that county from the date of filing such copy. The clerk shall enter such judgment on the appearance and judgment dockets in the same manner as if rendered in the court of which he is clerk. Executions shall only be issued from the court in which the judgment is rendered." Gen. St. Kan. 1868, c. 80, § 419.

Under this statute it is plainly the duty of any clerk of the district court of the state, when the journal entry of a judgment rendered in a federal court held in this state is filed in his office, "to enter such judgment on the appearance and judgment dockets in the same manner as if rendered in the court of which he is clerk." The words "any judgment" in the second sentence of the section obviously, and according to every rule for the construction of statutes, include the judgments specifically mentioned in the first sentence of the section. It may or may not include others, but it undoubtedly includes them. Section 3 of the act of congress expressly provides that the act shall not be construed to re-

quire the filing of a transcript of a judgment of a United States court in the county clerk's office of the county in which the judgment was rendered, in order that such judgment may be a lien on any property within such county. The result is that a judgment in a United States court in this state is a lien on the lands of the debtor only in the county in which the court was held and the judgment rendered; but the lien may be extended to any other county, in the mode provided by section 419 of the General Statutes of the state above quoted.

The defendants' judgment was not a lien on the lands of the debtor in Wabaunsee county, and the plaintiff is entitled to an injunction, as prayed for in its bill. Decree accordingly.

FOSTER, J., concurs.