### BARNETTE v. WELLS FARGO NEVADA NAT. BANK OF SAN FRANCISCO et al.

(District Court, N. D. California, Second Division. November, 1920.)

No. 441.

1. **Mortgages ⬳79—Conveyance in trust to pay claims of bank depositors held invalid for duress.**

Complainant and her husband, who had formerly lived in Fairbanks, Alaska, where the husband was president of a bank, removed to California. On failure of the bank and appointment of receivers, the husband received anonymous threats of personal violence if he did not return, and complainant, thinking that, by reason of her long residence in Alaska and wide acquaintance, she could be of help, returned with him, taking her two young children. On arrival at Fairbanks, they found public opinion extremely hostile to both, and threats were made by unknown creditors of the bank of personal violence to complainant and her husband, and of kidnapping of her children. Under these circumstances her husband made a conveyance of all his property in trust to the receivers as additional security for depositors, and complainant joined with him in a similar conveyance of her separate property, consisting of valuable real estate, the income from which, and the property itself, were to be used, if necessary, in paying claims of depositors in the bank; the conveyances having been accepted by order of the court. Complainant, her husband and children left Fairbanks at night under guard of officers, and returned to California. There was no agreement to forego suits or prosecutions against the husband, and he was afterwards indicted and tried on various charges, of all of which, except one, he was acquitted. Complainant had no interest in or connection with the bank, and was under no legal or moral obligation to pay its debts. *Held,* that her conveyance was without valid consideration, and was void, as made under legal duress, and that she was entitled to its cancellation.

2. **Cancellation of instruments ⬳34(3)—Suit for cancellation of instrument held not barred by laches.**

Delay of complainant, a married woman, in bringing suit to cancel a conveyance made under duress, pending criminal prosecutions against her husband and threats of personal violence to him, growing out of related

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

transactions which might be prejudiced by such suit, *held* not laches which barred her of relief.

3. **Courts ☜524—Property held by receivers as trustees held not in custody of court.**

Where a conveyance of property in trust for the benefit of depositors in an insolvent bank named the receivers of the bank and their successors as trustees, with directions to collect the revenues from the property, pay the taxes and expenses, and to "return to the court and its receivers the net amount of such rents," and also the proceeds of any of the property sold, the receivers, in the handling of the property and collection of the revenues, *held* to act as trustees of a private trust, and not as receivers, and sums collected by them, until so turned over and set apart for distribution to the beneficiaries, *held* not to have passed into the custody of the court, so as to deprive another court of jurisdiction of a suit against the receivers, as trustees, to determine rights therein.

In Equity. Suit by Isabelle Barnette against the Wells Fargo Nevada National Bank of San Francisco and Fred G. Noyes, individually, and as receiver. Decree for complainant.

W. H. Chapman and R. P. Henshall, both of San Francisco, Cal., for plaintiff.

De Journel & De Journel and Heller, Powers & Ehrman, all of San Francisco, Cal., for defendants.

DIETRICH, District Judge. The defendant Wells Fargo Nevada National Bank of San Francisco, Cal., is in the possession of certain funds of which the plaintiff claims to be the owner. The funds were deposited in due course by the defendant Fred G. Noyes, receiver of the Washington-Alaska Bank, a Nevada corporation (hereinafter referred to as the bank), formerly doing a banking business at Fairbanks, Alaska. Upon the petition of creditors, its property and affairs were, on January 5, 1911, placed in charge of receivers by an order of the District Court of Alaska. Shortly thereafter Noyes was made the sole receiver, and has continued to act as such down to the present time. At the time of the failure of the bank, E. T. Barnette, then the plaintiff's husband, was one of its directors and its president. The news of the failure came to him at Seattle, where he was endeavoring to arrange for additional credit for the bank. About the same time he received an anonymous letter threatening violence if he did not return to Fairbanks and straighten up the bank's affairs. There were also suggestions from friends and others that such a course would be advisable.

The plaintiff and her two young children were then in Los Angeles, to which place the family had moved from Fairbanks in 1910. By reason of a long residence and wide acquaintance in Alaska, she hoped, by going with her husband, she would be able to give him valuable assistance, and, delay appearing to be inexpedient, enfeebled though she was as a result of a recent surgical operation, she insisted upon accompanying him. Accordingly, after enduring great hardships, they arrived in Fairbanks about the middle of February.

By circumstances which need not be detailed, they were immediately apprised that the sentiment of the community was inflamed against them, and, acting upon the advice of their attorney and other friends,

they concluded it safer to live at a hotel than at their old home, which they still owned. Though the plaintiff had never had any financial interest in the bank, and had nothing to do with its management or control, she was soon made to realize that the esteem in which she had formerly been held would be of little avail.

Not only were there threats of indicting her husband, but suggestions of personal violence and injury to both of them, and of kidnapping their children. These threats, it may be assumed, came from unorganized sources; but, taken all together, the circumstances were such as to give to the plaintiff reason to fear for her children as well as for her personal safety, and more particularly for that of her husband. Under such conditions, and after she had been in Fairbanks about six weeks, during which time the bank's affairs were more or less constantly under discussion, she consented to join with her husband in turning over her separate property, as well as his personal estate, to the trustee, to be used, if necessary, in satisfying the depositors. That she was led to take the step partly through a not unreasonable fear of violence to herself and her family is scarcely open to question.

Instruments of conveyance in trust to one of the depositors for the benefit of all were prepared and tendered, but for reasons not now of importance they were found to be unsatisfactory to some of the interested parties, and, for the purpose of meeting the objections, two other instruments were prepared, which, after execution by plaintiff and her husband, were tendered to the receivers.

Being in doubt touching their authority to accept the same and the expediency of so doing, they required express authorization from the court. Accordingly the grantors presented to the court a petition for an order authorizing the acceptance; but the court, being of the opinion that the matter should originate with the receivers, declined to entertain the petition, and directed that the deeds be turned over to them for their consideration.

Two days later, on March 18, 1911, they presented to the court an "application for instructions," in which they represented that on March 18th the Barnettes had delivered to them "two trust deeds, properly executed, wherein" they were "named as trustees, * * * said deeds being in trust on the terms and conditions therein specified; the object and purpose being as therein expressed to secure and ultimately pay the depositors and owners of unpaid drafts of the defendant bank any balance that may remain after the property and assets of said bank are credited and applied in payment thereof." It was further represented that the instrument conveyed to them as trustees all property in Alaska belonging to plaintiff's husband, of which they had any knowledge, and "some valuable real estate that is the separate property of Isabelle Barnette." They expressed the view that by accepting the trust they would waive the right to proceed against the plaintiff's husband in a contemplated suit to fix his liability (presumably as stockholder and officer), and prayed for instructions as to whether they should accept the "trust deeds and undertake the duties and responsibilities entailed thereby, or return the same to the grantors."

Upon consideration, it was ordered that the deeds be accepted and

that the receivers take the proper and necessary steps to secure the property and the issues therefrom "to the payment of the liability of the Washington-Alaska Bank, in connection with your [their] duties as receivers." Accordingly the receivers accepted the trust, and the plaintiff, accompanied by her husband, left Fairbanks under cover of night, attended by deputy marshals to guard against possible violence, and returned to California, where she has since continued to reside.

The fund in question is made up of rents coming to the receiver's hands from the plaintiff's separate property so conveyed and the proceeds of a sale of one item. One of the deeds relates to property in which the plaintiff had no separate interest, and is therefore immaterial to the present issue. The instrument covering her estate runs from her and her husband, as first parties, to "F. W. Hawkins and E. H. Mack, receivers of the Washington-Alaska Bank. * * * and their successors in office, * * * trustees," as second parties. It recites the failure of the bank, the relation of the plaintiff's husband to its management, her desire to assist him in paying the depositors, and her information that a civil action is about to be commenced against him, and conveys "to the parties of the second part and their successors in the office of receiver of said bank, in trust." certain described properties, all being real estate in the town of Fairbanks.

Thereupon follows a recital of the history of the bank, the probability of a deficit, the undertaking of E. T. Barnette to pay depositors and holders of unpaid drafts in full, with interest, the understanding that the amount of such deficit is to be determined on or before November 18, 1914, and it is thereupon agreed that the second parties should take immediate possession of the properties conveyed, and collect the income therefrom, and pay all taxes and other charges, and "return to the said court (the receivership court) and its receivers the net amount of such rents, issues, and profits, the same to be disbursed by the said court through its receivers pro rata to the said depositors and the owners of unpaid drafts." It is further provided in the instrument that, "if at any time after the delivery of this trust deed the said trustees and their successors or successor and the said parties of the first part shall deem it more advantageous to sell." then the property may be sold by the said trustees, "and the proceeds * * * shall by the said trustees be delivered to the said court or its receivers, and be disbursed under orders of the court," etc.

But it was further provided, if there was still a deficit on November 18, 1914, then the second parties, receivers, "as such trustees or trustee." were empowered to sell at private sale any or all of the property and turn the proceeds into court, to be disbursed under the order of the court, to extinguish such deficit, the overplus, if any, to be paid to the first parties. If the depositors and holders of unpaid drafts should be otherwise-satisfied, the second parties were to reconvey the property to the first parties, and if, upon the other hand, there still remained a deficit after applying the proceeds of the property, the first parties obligated themselves to pay it.

In view of the defense that the res of the suit is in the actual possession of the Alaska court, and that therefore we are without jurisdic-

tion to grant relief, I have set forth, in substance or literally, all the provisions of the deed and of the application of the receivers for instructions and the order made thereon, bearing upon the question of the capacity in which the receivers took, and the defendant Noyes now holds, the property and the income therefrom. The petition presented by the plaintiff to the Alaska court is referred to only in a general way, because, as we have seen, the court declined to consider it, and hence it cannot be regarded as having any direct relation to the acceptance of the instrument of trust. The case is one where the plaintiff and her husband tendered to the receivers the written instrument of trust, and they, in turn, exhibited it to the court with their application for instructions, and thereupon the court, upon consideration of such application and the instrument of trust, made the order pursuant to which the receivers acted. The status of the property, therefore, is to be determined in the light of the deed itself and the conditions of its acceptance, as set forth in the application for instructions and the order made thereon.

Subsequently indictments were returned against the plaintiff's husband, upon some of which, it appears from the record, supplemented by statements of counsel, he was tried, with verdicts of acquittal upon all except one count, charging him with false entries in a report of the condition of the bank. On November 16, 1914, the plaintiff commenced a suit in the Alaska court, setting forth, as here, that the deed was procured by duress, and praying for its cancellation and for other appropriate relief. Her attorney, having learned in May, 1918, of the deposits of the funds in question in the San Francisco bank, communicated the information to her San Francisco counsel, who thereafter, on July 24, 1918, filed the complaint herein. The Alaska case having been set down for trial and the plaintiff failing to appear, the same was dismissed for want of prosecution on August 1, 1918. Whether, as is contended, she suffered a dismissal because she could not be present and give her testimony, or because she was advised that her rights could better be protected in the California case, is not entirely clear and not highly material.

By her bill here she asserts that the proceedings in the Alaska court in the receivership suit were void for want of jurisdiction, and that the trust deed was obtained by threats and intimidation, and she prays for a cancellation of the deed and for a decree awarding to her the income and proceeds of the property described therein; that is, the fund or a part of the fund deposited in the defendant bank. In their answer, as amended, the defendants deny that the Alaska court was without jurisdiction, and also deny duress, and set up a number of affirmative defenses, some of which raise questions of law appearing upon the face of the bill. These questions of law were presented to Judge Van Fleet by motion, upon which his ruling was adverse to the defendants' position. The cause is now submitted upon evidence taken in open court.

[1] Upon the primary issue of duress, as already intimated, I find for the plaintiff. I attach little importance to the threat of indictment, but the peril of personal violence to plaintiff and her husband, and the suggestion that her children might be kidnapped, considered in the light

of all the surrounding circumstances, were such as not unreasonably to cause plaintiff to yield to a feeling of fear. Such was her natural solicitude for the safety of her family that she was incapable of exercising the degree of free will necessarily involved in legal competency, and it must be held that she contracted under compulsion of fear amounting to duress in law. 9 Cyc. 450; Pierce v. Brown, 7 Wall. 205, 19 L. Ed. 134.

The specific threats came from but few of the depositors, it is true; but there was a general attitude of menace, and it is difficult to believe that those who represented the creditors were unconscious of the prevailing atmosphere of intimidation. When analyzed, the transaction itself is strongly suggestive of some extraordinary influence. The plaintiff had had nothing to do with the bank's affairs and was in no wise responsible for its failure. She could not have been actuated by a sense of any legal or moral obligation. Her husband was turning over apparently all his personal estate.

What consideration could have induced her to add her separate holdings? There was no claim against her to settle or compromise. In a civil action against her husband the most that could be hoped for was to take such property as he had, and that he was turning over by deed, to avoid the waste of litigation, and, even so, neither the receiver nor the creditors agreed to withhold either civil suits or criminal prosecutions. Counsel for the defendants draw attention to the plaintiff's acknowledgment of the execution of the instrument before a duly authorized officer, and her petition asking the court to direct the receivers to accept the trust. But these facts are without great significance. Once persuaded that, for the protection of her husband and children, it was necessary for her to give up her property, the means to such an end became of incidental importance only; naturally, she was willing to comply with any formalities and resort to any procedure to accomplish the purpose, and to hesitate before the acknowledging officer or to decline to sign the petition would have been as perilous as originally to have refused to attach her name to the deed.

The question of whether or not E. T. Barnette is an indispensable party was necessarily involved in the ruling upon the motion, and hence it will not now be considered.

[2] If the defenses of laches and limitations, as they now appear under the evidence, are not fully covered by Judge Van Fleet's ruling upon the motion, I am still inclined to think they do not constitute a bar. Assuming that in executing the deed the plaintiff was actuated by fear, she could not reasonably be expected openly to repudiate her act the moment she left Fairbanks. The danger she feared was of such character that it was not easily guarded against. From the great majority of the 1,400 depositors she doubtless feared no evil, but she was without means of knowing who the few were who would be unwilling to yield to the restraint of the law and would resort to violence for the purpose of intimidation or revenge. For her to have repudiated the deed as soon as she got out of Alaska would have been to intensify rather than to allay the prevailing bitterness, and possibly to stir to action some one already inclined to resort to extreme measures.

Besides, her husband was under indictment, and she might reasonably conclude that such action upon her part would prejudice his chances of a fair trial. The feeling was such in Fairbanks and vicinity that after a considerable length of time had elapsed the court felt constrained to grant a change of venue, and incidents occurring at Fairbanks following the trial clearly indicate that even at that time the passions excited by the failure had not become extinct.

It is not entirely clear under what one of the several statutes of limitation, cited from the laws of Alaska and of California, the case falls; nor is it necessary to decide. In view of all the conditions it is doubted whether any one of them that may reasonably be invoked would constitute a bar in the state or territorial courts. But, however that may be, while federal courts, in applying the principle of laches, measurably conform to, they are not bound by, such statutes. With this rule in mind, it is thought that the plaintiff's delay has not been so unreasonable that she should be denied all relief. The receivership estate should, of course, be reimbursed for any reasonable outlays that have been made in handling and preserving the property, including a reasonable allowance for the services of the receivers and their counsel, performed in relation thereto. With such an adjustment the receivership estate will have lost nothing which rightfully belongs to it.

The case presents but few elements of estoppel. Criminal prosecutions were not stayed or prejudiced by the execution of the deed. There is a suggestion, but no proof, that the receivers refrained from bringing civil actions against Barnette for this reason. Neither the deed here nor the other deed conveying his individual holdings was given or accepted upon the condition that any existing right of action be waived. Nor is it perceived how the acceptance of this deed could, as a matter of law, operate to extinguish any such right. So far as appears, he had no other property that could be reached by execution. That it was the only property he had in Alaska was the belief of the receivers when they applied for instructions, and in the absence of evidence to the contrary it is reasonable to assume that they withheld civil actions because they were convinced that any judgment they might obtain would be worthless. There is no pretension that they ever had any right of action against the plaintiff.

[3] There remains for consideration the defense that the res is in the possession of the receivership court, and hence within its exclusive jurisdiction. The same point was made upon the motion, but is not foreclosed by the ruling thereon, for the reason, as we have seen, that in the complaint it is alleged that all of the receivership proceedings are void for want of jurisdiction, and if, as, for the purpose of the motion, it must have been assumed, these averments were true, there was no ground for contending that the property was in custodia legis. But the plaintiff has now abandoned this branch of the complaint, and relies exclusively upon the claim of duress.

The familiar rule that when, through its receiver, a court of equity has taken possession of property, it draws to itself exclusive jurisdiction to determine all claims and controversies in relation thereto, is, of course, recognized. And it is further understood that without its con-

sent its possession may not be disturbed; nor, except in so far as permitted by section 3 of the act of August 13, 1888 (25 Stat. 436; section 66, Judicial Code [Comp. St. § 1048]), may its receiver be sued without its permission. Comment upon the numerous decided cases collected in the defendants' brief, in which these principles have been applied and the statute construed, would serve no useful purpose, for in one view of the record the transaction under consideration is without precedent, and the controlling question is one of fact rather than of law.

Undoubtedly it was understood when the deed was executed that the property was to be held in trust for the benefit of depositors, upon the conditions expressed. But in what capacity were the trustees to hold it—as individuals or as officers of the court? In itself the phraseology of the deed would seem quite clearly to import the former view. Apparently the grantees were to act as trustees of the property as well as receivers of the insolvent estate, and they are referred to in the deed as receivers only for the purpose of description, and of providing a line of succession in the trusteeship. In support of this view it is to be noted that no objection was raised to the deeds first tendered because they named an unofficial depositor as trustee; true, this depositor was averse to accepting the trust, but the general objection related to other features. It is further to be observed that in the deed in question the incumbent receivers and their successors are designated as trustees, and not merely receivers.

Moreover, as we have seen, the instrument expressly provides that the trustees are to collect the revenue and pay the taxes and other expenses, and "return to the said court and its receivers the net amount of such rents," etc. And again it is provided that, in the contingency of a sale of the premises by the "trustees," the proceeds shall "by the said trustees be delivered to the said court or its receivers, and be disbursed," etc. In these provisions there would seem to be a clear recognition of the fact that two distinct trusteeships were vested in the same persons or person; the one being official and relating to the insolvent estate, and the other being private and relating to the individual property of the plaintiff.

Possibly the suggestion of the receivers, in the application for instructions, that, if they should accept the trust, it would be impracticable for them to proceed against the plaintiff's husband in a civil action, signifies a different conception upon their part; but aside from that one feature there is nothing in the application out of harmony with this view. Certain phraseology in the court's order or instructions is not so easy to reconcile; but in that connection it is to be noted that the instructions relate to the lands of E. T. Barnette in Mexico, as well as to property in Alaska, and it may be doubted whether the court was of the opinion that the receivers could, as such, exercise any authority or assert any property rights in a foreign country.

Upon the whole, I am inclined to regard the language of the deed as controlling, and hence to adopt the view that until, in conformity with the terms and conditions expressed, the property was converted into money and set apart for distribution to the beneficiaries, it was to be

held by the trustees in a private rather than an official capacity, and hence would not be in the custody of the court.

If the view were taken that possession of all the property is held by the defendant in his capacity as receiver, it would still be appropriate to grant a part of the relief prayed for. Upon that theory the acceptance of the deed would be a transaction of his in carrying on the business of the receivership, and under the terms of the statute cited, supra, he could be sued in respect thereto. We would then have a case where the defendant, as receiver, has accepted a deed obtained from the plaintiff by duress, and she asks that it be canceled. The order of the Alaska court directing that it be accepted presents no insurmountable obstacle; while, of course, no duress was practiced directly upon either the receivers or the court, the order is one of the direct consequences of the duress practiced upon the plaintiff. The entry of a judgment upon confession made by a party under threats amounting to duress would be promptly set aside or nullified for extrinsic fraud. So here the order in question was the natural outcome of the execution and tender of the deed. Hence, even if it could be accorded the dignity of a judgment, it would not be immune from attack, for a judgment obtained by extrinsic fraud may be nullified by a decree in equity, and the victim thereof is not, in seeking relief, limited to the tribunal in which it is entered. Sayers v. Burkhardt, 85 Fed. 246, 29 C. C. A. 137.

Without further discussion it is concluded that the plaintiff is entitled to a decree canceling the deed and terminating all authority of the trustee or trustees thereunder. What specific relief, if any, should be granted as to the fund arising out of the rents and proceeds of the property depends upon facts not fully disclosed. As already suggested, if these moneys have passed into the hands of the defendant as receiver and by him, as an officer of the court, are held for application to the discharge of the indebtedness of the bank, pursuant to the terms of the trust deed, they must be deemed to be in the possession of the Alaska court, and that we are not at liberty to invade. In such case plaintiff's remedy would be to seek intervention in the receivership proceeding and there ask for an order directing the receiver to deliver the funds to her.

Upon the other hand, if they are still held by the defendant in his capacity as trustee under the deed, a decree should be entered adjudicating the right and title thereto to be in the plaintiff. In any event, it may be that, under the peculiar circumstances of the case, considerations of comity will require the plaintiff to apply to the Alaska court for a direction to the defendant to relinquish to her possession of both the real property and the fund. In that connection it is to be noted that by the concluding clause of the statute authorizing suit against a federal court receiver, supra, it is provided that the suit shall nevertheless "be subject to the general jurisdiction of the court in which such * * * receiver is appointed, so far as may be necessary to the ends of justice."

At the close of the hearing there was an understanding that, if the finding upon the general issues should be in favor of the plaintiff, it probably would be necessary to take further evidence as to the amount

of the fund subject to the jurisdiction of this court. It may be that this understanding did not reach to the precise question whether the fund is held by the defendant as trustee or as receiver; but that issue is deemed to be of such importance, and, touching it, the evidence is so fragmentary and inconclusive that it is thought to be proper to direct that the further hearing shall extend to it, as well as cover the question of the precise amount which the defendant holds in the one capacity or in the other, both on deposit in the defendant bank and in custody in Alaska.

Accordingly the defendant Noyes will be directed to produce, for the inspection and use of the plaintiff in evidence, all accounts and vouchers disclosing the manner in which the proceeds and rents from the property have been received, held, and deposited, to the end that the amount thereof now on hand may be shown, and also the capacity in which he holds the same. He may also adduce evidence of any charges which ought in equity be made against the fund, for services in caring for the property and in collecting and safe-keeping the rents and issues, for consideration, in case it is held that the plaintiff is entitled thereto, for in any event the plaintiff can recover only upon condition of doing equity.

If counsel are unable to agree upon further procedure, upon motion, appropriate orders will be made.